# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TIMOTHY D. NAEGELE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 03-2507 (RMU) |
| | : | | |
| v. | : | | |
| | : | Document Nos.: | 8, 32, 34, 43, 52, 57, 58 |
| DEANNA J. ALBERS, | : | | |
| RAYMOND H. ALBERS II, | : | | |
| LLOYD J. MICHAELSON, | : | | |
| and Does 1-10, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant Michaelson's Motion to Dismiss; Denying the Plaintiff's Motions for Sanctions; Denying the Plaintiff's Motion to Strike Defendant Michaelson's Response Document; Denying the Plaintiff's Motion to Strike the Notice of Automatic Stay; Granting the Defendants' Motion to Stay; and Denying all Remaining Motions as Moot

## I.    INTRODUCTION

The plaintiff brings this eight count complaint against Deanna Albers, Raymond Albers, II, Lloyd Michaelson, and Does 1 through 10 (collectively, "the defendants") alleging, *inter alia*, breach of contract, anticipatory breach of contract, fraud and deceit, common law conspiracy to commit fraud and deceit, negligent misrepresentation, tortious interference with contract, and conspiracy to commit tortious interference with contract. The parties bombarded the court with a multitude of motions before even sufficiently addressing the subject-matter jurisdiction of this court to hear any of their sundry claims. Currently pending before the court are the defendants' notices of automatic stay, which the court treats as a collective motion for stay; the plaintiff's motion to strike the defendants notices of automatic stay ("plaintiff's motion to strike stay");

1

defendant Michaelson's motion to dismiss; the plaintiff's motion for sanctions; defendant

Michaelson's motion to continue the summary judgment hearing ("defendant Michaelson's

motion to continue"); the plaintiff's motion to quash notice of deposition by defendant

Michaelson ("plaintiff's motion to quash"); the plaintiff's second motion for sanctions; and the

plaintiff's motion to strike the defendant's response to the court's June 18, 2004 order

("plaintiff's motion to strike").  Before ruling on the pending motions, the court takes a moment

to review the somewhat tangled procedural posture of this case.

  The court faces a contractual dispute between two parties, each tugging for jurisdiction -

either in California or in the District of Columbia.  With a suit filed in this court and arbitration

proceedings commencing in California, the parties have refused to play in the same judicial

ballpark.  Instead, they have engaged in Rambo-style litigation tactics, each arguing for

proceedings to commence in his respective venue, and bombarded the court with a series of

motions, including oppositions to motions that do not exist and multiple oppositions to a single

motion.  The court has ruled only on a motion to seal documents and a motion for extension of

time.  After wading through the flood of submissions offered by the parties, the court denies

defendant Michaelson's motion to dismiss for lack of subject matter jurisdiction, but grants his

motion for lack of personal jurisdiction; denies both of the plaintiff's motions for sanctions;

denies the plaintiff's motion to strike the defendants' notices of automatic stay; denies the

plaintiff's motion to strike defendant Michaelson's response document; grants the defendants

Albers' motion to stay; and denies all remaining motions as moot.  Moreover, the court dismisses

defendant Michaelson from this action and stays all proceedings pending arbitration in

California.

By providing the parties with a single forum for debate, that is, arbitration in California, the court hopes that the parties will resolve at least some of their issues before returning to this jurisdiction. The parties are required to jointly notify the court of the results of the arbitration in California. Furthermore, should the parties return to this court, the parties are on notice that the first matters of inquiry will again be the subject matter jurisdiction of this court and the real parties in interest. The court now addresses the convoluted background of this case.

## II.    Background

Timothy D. Naegele brings this action against Deanna J. Albers ("D. Albers"), Raymond H. Albers II ("R. Albers"), Lloyd J. Michaelson, and John Does #1-10 to recover fees and damages for legal services he claims his firm rendered to the Albers. Pl.'s Am. Compl. ¶¶ 4-6. All of the defendants are citizens of California, *see id.*, and the plaintiff is an attorney licensed to practice law in California and the District of Columbia. Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n to MTD") at ¶ 2. In December 1998, the Albers asked the plaintiff to represent them in a separate legal dispute ("the Suit"). Pl.'s Am. Compl. ¶ 7. They signed a contract ("the Fee Agreement") on December 18, 1998, with three subsequent addenda detailing costs. *Id.* ¶ 8. These addenda included a forum-selection clause that states that "a court of the District of Columbia and/or . . . the United States District Court for the District of Columbia" shall be the forum for the resolution of any dispute or litigation arising from the attorney-client agreement. Pl.'s Resp. to MTD, Ex. A (Fee Agreement) at 3.

The plaintiff claims that in December 2002, attorney Lloyd J. Michaelson and other

agents and/or lawyers (Does #1-10)[1] advised the Albers to take certain actions or engage in inaction which resulted in injuries to the plaintiff.  Pl.'s Am. Compl. ¶ 10.  But the Albers signed the third and final addendum in January 2003, with one extra stipulation: an $82,000 retainer that required them to sign a note placing a lien on their home.  Pl.'s Resp. to MTD, Attach. A (Third Addendum).  In August 2003, Michaelson notified the plaintiff that he was now representing the Albers in the Suit.  Pl.'s Resp. to MTD at ¶ 8(D)(6).  The plaintiff responded by suing the defendants for breach of contract, conspiracy, and tortious interference with the contract.  Pl.'s Am. Compl. ¶¶ 11-48.

Back in their home state, California, the defendants filed a notice of automatic stay under the California Business and Professions Code ("Cal. Prof. & Bus. Code"), § 6201(c), to halt the current suit and allow the parties to arbitrate this fee dispute in Los Angeles.  Yet, the plaintiff is denying the terms of the California stay and attempting to proceed with this suit.  He first filed a motion to strike the notice of automatic stay, setting off an avalanche of successive motions that now inundate this court.  The defendants, all filing *pro se*, continue to insist the stay freezes any further court action.  Reply to Opp'n to Pl.'s Mot. to Strike Not. of Automatic Stay at 4.

In May 2004, *pro se* defendant Michaelson filed a motion to dismiss for lack of subject matter and personal jurisdiction.  Def. Michaelson's Mot. to Dismiss ("Def. Michaelson's MTD").  On June 18, 2004, this court directed the plaintiff to show cause that the court has subject matter jurisdiction over the present suit.  Order dated June 18, 2004.  In the plaintiff's declaration and in his supplemental memorandum, he claims that diversity jurisdiction exists and

_____

[1]   In his amended complaint, the plaintiff also included John Does 1-10 as defendants, claiming they were agents and/or lawyers who gave the Albers advice on nonpayment. The plaintiff has yet to identify these John Does.

4

requests the dismissal of Michaelson's motion with prejudice.  The parties continued to fire

motions directed at one another, and currently have six motions pending before the court.  The

court faces a tangle of issues all blinking for attention, and the court now addresses each motion

in turn.

### III.    ANALYSIS

#### A.    The Court Grants in Part and Denies in Part the Defendant Michaelson's Motion to Dismiss

#### 1.    Legal Standard for Diversity Jurisdiction

A federal district court has subject-matter jurisdiction over a suit when the amount in

controversy exceeds $75,000 and the parties are diverse in citizenship.  28 U.S.C. § 1332(a);

*DeBerry v. First Gov't Mortgage & Investors Corp.*, 170 F.3d 1105, 1106 n.1 (D.C. Cir. 1999);

*see also Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998) (per curiam) (identifying the

$75,000 amount-in-controversy requirement for federal diversity jurisdiction under 28 U.S.C. §

1332(a)).  The amount in controversy is established at the commencement of the action.  28

U.S.C. § 1335(a).  Subsequent events reducing the amount in controversy will not divest the

court of its jurisdiction.  *St. Paul*, 303 U.S. at 289-90.  If it becomes apparent during the course

of litigation that from the outset the maximum conceivable amount in controversy was less than

the jurisdictional minimum, the court must dismiss the case for lack of subject matter

jurisdiction.  *Watson v. Blankinship*, 20 F.3d 383, 387-88 (10th Cir. 1994); *Jones v. Knox

Exploration Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993).  Where the plaintiff has alleged a sum

certain that exceeds the requisite amount in controversy, that amount controls if made in good

faith. *St. Paul*, 303 U.S. at 289-90.  Additionally, to justify dismissal, it must appear to a legal

certainty that the claim is for less than the jurisdictional amount. *Id*. at 288-89; *Hartigh v. Latin*, 485 F.2d 1068, 1071 (D.C. Cir. 1973) (citing *Gomez v. Wilson*, 477 F.2d 411 (D.C. Cir. 1973)).

Punitive damages are properly considered as part of the amount in controversy. *Hartigh*, 485 F.2d at 1072 (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240, (1943)). In considering punitive damages to satisfy the jurisdictional minimum in a diversity case, the court must conduct a two-part inquiry. *Bell*, 320 U.S. at 240; *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209 (7th Cir. 1995). First, the court must determine whether the plaintiff can recover punitive damages as a matter of governing substantive law. *Bell*, 320 U.S. at 240. If so, the court has subject-matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount. *Cadek*, 58 F.3d at 1212. In this second step, the plaintiff must present some factual evidence of entitlement to punitive damages. *Larkin v. Brown*, 41 F.3d 387, 388-89 (8th Cir. 1994) (citing *Esler v. Northrop Corp.*, 86 F.R.D. 20, 28 (W.D. Mo. 1979) (recognizing that "when the plaintiff's allegation of the amount in controversy is challenged . . . existence of the required amount must be supported by competent proof") (citing *Hulsenbusch v. Davidson Rubber Co.*, 344 F.2d 730 (8th Cir. 1965))).

### 2.    The Plaintiff Adequately Demonstrates That This Court has Subject Matter Jurisdiction

The defendant argues that the court lacks subject matter jurisdiction to hear this claim for the following reasons: (1) there is not complete diversity between the parties because the defendants are all domiciled in the State of California, *see* Def. Michaelson's MTD at 3, and the plaintiff moved to California in 1995 and has since resided there, *see id.* at 3-4; and (2) the plaintiff's claim does not meet the amount in controversy requirement, that is, the amount

claimed does not exceed $75,000.[2]  Def. Michaelson's Reply to Pl.'s Opp'n to Def. Michaelson's MTD ("Def. Michaelson's Reply") at 3-4.

The plaintiff argues that there is diversity of citizenship between the parties because he is a citizen of Florida, *see* Pl.'s Resp. to MTD at ¶ 2, while the defendants are all residents of California.  Pl.'s Opp'n to Def.'s MTD ("Pl.'s Opp'n to MTD") at 7-10.  Additionally, the plaintiff contends that he is entitled to judgment in the sum of $7,411,477.14, *see* Pl.'s Opp'n to MTD at 40, which is an amount that exceeds the statutory requirement of $75,000.

For the purpose of diversity jurisdiction, "[d]omicile is determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time."  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984) (citations omitted). "Citizenship depends upon domicile, and, as domicile and residence are two different things, it follows that citizenship is not determined by residence."  *Shafer v. Children's Hosp. Soc. of Los Angeles, Cal.*, 265 F.2d 107, 122 (D.C. Cir. 1959) (quotations omitted); *see also Williams v. Wash. Post Co.*, 1990 U.S. Dist. LEXIS 11183, at *5 (D.D.C. 1990) (stating that "[d]omicile, a concept drawn from conflicts of law, is more narrow than the concept of residency . . . one can reside in one place but be domiciled in another").  Hence, a mere allegation of residence in a state is not an assertion of citizenship therein.  *Id.* at 121.  While residency is indicative of domicile, it is not determinative; therefore, a "prolonged absence from one's domicile is not determinative of abandonment."  *Wagshal v. Rigler*, 947 F. Supp. 10, 13 (D.D.C. 1996).

"The question of domicile is a mixed question of law and fact."  *Hicks v. Hicks*, 80 F.

---

[2]    Specifically, defendant Michaelson claims that because the plaintiff sold and assigned the $82,000 promissory note to Linda Schuerman on July 3, 2003 for $60,000, the amount in controversy is less than $75,000.  Def. Michaelson's Reply to Pl.'s Opp'n to Def. Michaelson's MTD ("Def. Michaelson's Reply") at 3-4.

Supp. 219, 220 (D.D.C. 1940).  In many instances, a party's intent to remain in a particular state

for an indefinite period of time will be clear from the factual evidence presented to the court.  *See*

*Mayo v. Questech, Inc.*, 1989 U.S. Dist. LEXIS 4267, at *2 (D.D.C. 1989).  A plaintiff may

submit "a number of generally accepted indicia of domiciliary status," including sworn

declaration of domicile; voting registration; state driver's license; ownership of personal property

in a given state; bank accounts and club membership.  *Wagshal*, 947 F. Supp. at 13.  Once a party

presents to the court evidence of substantial indicia of domiciliary status, the party is entitled to a

presumption that it has established a domicile.  *Id.*  An evidentiary hearing is necessary, however,

when the opposing party's written submissions contradict the stated intent of the party whose

domicile is in dispute.  *See Prakash,* 727 F.2d at 1179.   Finally, it is the plaintiff that bears the

burden of proof when jurisdictional facts are challenged.  *McNutt v. General Motors Acceptance*

Corp., 298 U.S. 178, 188-89 (1936); *Mayo*, 1989 U.S. Dist. LEXIS 4267, at *2 (citing *Thompson*

*v. Gaskill*, 315 U.S. 442, 446 (1942)).

    The plaintiff declares that he was a citizen of Florida at the time of filing of the lawsuit

and that he currently remains a domiciliary of Florida.  Naegele Decl. in Support of Pl.'s Opp'n

to Def. Michaelson's MTD ("Naegele Decl. dated Aug. 2, 2004")  ¶ 7.  In support of his claim,

the plaintiff has submitted a copy of his Florida driver's license; a copy of the Declaration of

Domicile and Citizenship filed with the Clerk of the Circuit Court of Monroe County, Florida;

and proof of his membership in the Ocean Reef Club, located in the Florida Keys.  Naegele Decl.

dated Aug.2, 2004, Attach. A, B.  He further asserts that he is registered to vote in Florida and

that he maintained two bank accounts at Florida bank branches.  Naegele Decl. dated Aug. 2,

2004, ¶¶  5, 7.  Defendant Michaelson alleges that the plaintiff's domicile is California because

he maintained offices in California.  Def. Michaelson's Mot. to Dismiss at 3.  The defendant

8

further argues that the co-defendants, the Albers, assert that the plaintiff had "resided in the Malibu/Calabasas area in Los Angeles County" between 1998 and March 2003.  R. Albers Decl., ¶ 3.

Because the plaintiff has presented substantial evidence that his domicile is Florida and that he has an intent to remain there for an indefinite period of time, and the defendant has only proffered unsupported allegations to contest the plaintiff's domicile, the plaintiff is entitled to the presumption that he successfully established Florida as his domicile.  *Wagshal*, 947 F. Supp. at 13.  Based on the evidence presented by the parties, the court finds it unnecessary to engage in an evidentiary hearing to determine the plaintiff's domicile.  The court is persuaded that the plaintiff's domicile is indeed Florida and the domicile of all the named defendants is California; thus, there is complete diversity between the plaintiff and the defendants.

Diversity jurisdiction, however, requires not only diversity in citizenship but also that the amount in controversy exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a); *DeBerry*, 170 F.3d at 1106 n.1.  The plaintiff's claim for money damages in the amount of $69,018.37 towards prejudgment interest and an amount of $8,237.82 towards attorney fees and costs would not contribute to the amount in controversy.  28 U.S.C. § 1332(a), *see also Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 473 (1st Cir. 1979) (stating that "[i]nterest is specifically excluded . . . as part of the jurisdictional amount"); 15-102 Moore's Federal Practice § 102.106 (2004).  The court, however, finds that the plaintiff has a right to claim an amount of $160,071.74 in legal fees and expenses incurred by his representation of the Albers with respect to the Albers' appeal.  Additionally, the D.C. Circuit has instructed that a plaintiff's punitive damages claim, which here is an amount of $4 million, is properly considered as part of the amount in controversy when the plaintiff proffers factual evidence that he is entitled to punitive

9

damages and it is not clear beyond a legal certainty that the plaintiff would be unable to recover

such damages. *Hartigh*, 485 F.2d at 1072 (citing *Bell v. Preferred Life Assurance Soc'y*, 320

U.S. 238, 240, (1943)).  Because the plaintiff meets the amount in controversy requirement even

excluding the punitive damages claim, the court deems it unnecessary to decide the issue of

whether the punitive damages claim in the instant case contributes to the amount in controversy.

Therefore, the plaintiff met his burden in proving that the two prongs of diversity jurisdiction

exist, diversity of citizenship and amount in controversy.  Accordingly, the court concludes that it

has subject matter jurisdiction over this action.

### 3.    Legal Standard for a Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff

has the burden of establishing a prima facie case that personal jurisdiction exists.  *E.g., Second*

*Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  A prima

facie case in this context means that the plaintiff must present evidence sufficient to defeat a

motion for judgment as a matter of law.  *See Cable/Home Communication Corp. v. Network*

*Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d

1225, 1227 (D.C. Cir. 1984) (indicating, under a differently labeled but similar standard, that

such motions should be denied unless "the evidence, together with all inferences that can

reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the

verdict").

To determine if a basis for personal jurisdiction exists, the court should resolve factual

discrepancies in the complaint and affidavits in favor of the plaintiff.  *Crane v. New York*

*Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).  However, the court need not treat all of the

plaintiff's allegations as true.  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4

(D.D.C. 2000); *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (stating that courts should not accept bare allegations and conclusory statements). Moreover, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Arista Records, Inc. v. Sakfield Holding Co. S.L.*, 314 F. Supp. 2d 27, 30 (D.D.C. 2004) (internal quotations omitted).[3]

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs.*, 199 F.3d at 1347.

First, a plaintiff must show that the personal jurisdiction may be grounded in one of the several bases provided by the District of Columbia's Long-Arm statute. D.C. CODE § 13-423 (2001); *GTE New Media Servs.*, 199 F.3d at 1347. That statute provides, *inter alia*, that personal jurisdiction exists over a person acting directly or by an agent for a claim for relief arising from the person's

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia[.]

D.C. CODE § 13-423(a). Subsection (b) qualifies the reach of the statute by noting that "[w]hen

---

[3]     If the defendant's affidavits raise issues to defeat jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1269 (11th Cir. 2002).

jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."  *Id.* § 13-423(b).

Second, the Due Process Clause of the Fifth Amendment requires the plaintiff to demonstrate "'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002).  It is "'essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Creighton Ltd. v. Government of State of Qatar*, 181 F.3d 118 (D.C. Cir. 1999) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."  *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

**4.    The Court Dismisses Defendant Michaelson for Lack of Personal Jurisdiction**

Defendant Michaelson, a resident of California, contends that this court may not exercise personal jurisdiction over him because he is not a citizen of the District of Columbia, he was served with process in the State of California, and the District of Columbia's Long Arm Statute does not provide a basis of personal jurisdiction over him.  Def. Michaelson's MTD at 4-5.  He further contends that he has never resided in the District of Columbia, *see id.*, and has had "no contacts whatsoever with the District of Columbia."  *Id.* at 5.  Moreover, defendant Michaelson contends that the plaintiff has failed to prove the constitutional requirements to exercise personal jurisdiction over him; specifically, the plaintiff did not show that defendant Michaelson has had

"minimum contacts" with the forum state, the District of Columbia.  Def. Michaelson's Reply to MTD at 4.

The court begins its analysis of whether or not it may properly exercise personal jurisdiction over defendant Michaelson by way of the District of Columbia's Long-Arm Statute. The court agrees with the defendant that the statute does not confer this court with jurisdiction over Michaelson.  The court concludes that the plaintiff, who bears the burden of proof, has failed to show that the defendant transacted any business in the District, contracted to supply services in the District, caused tortious injury to him in the District, or that the defendant caused a tortious injury to him outside of the District but nevertheless solicits business or derives a substantial income from services rendered in the District.  In fact, the defendant derives his income solely from his law business in California and has neither transacted business nor caused tortious injury in the District of Columbia.  Def. Michaelson's MTD at 4.  Therefore the plaintiff has failed to meet his burden that the District of Columbia's Long Arm statute confers this court with jurisdiction over defendant Michaelson.  D.C. Code § 13-423(a).

The plaintiff has also failed to show that the constitutional requirements for personal jurisdiction have been met.  Here, the plaintiff focuses on the fee agreement rather than contesting the defendant's argument that minimum contacts lack between defendant Michaelson and the District of Columbia.  The Due Process Clause of the Fifth Amendment mandates that the defendant must have "minimum contacts" with the forum so as not to "offend traditional notions of fair play and substantial justice." *GTE New Media Servs.*, 199 F.3d at 1347 (citations omitted).  Because the plaintiff has failed to show that defendant Michaelson purposely availed himself of this court's jurisdiction and that he could reasonably anticipate being haled into this court, the plaintiff has not shouldered his burden for the constitutional requirements for this court

to exercise personal jurisdiction over him.  *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988); *GTE New Media Servs.*, 199 F.3d at 1347.  Based on the foregoing reasons, the court concludes that the plaintiff has failed to establish this court's personal jurisdiction over the non-resident defendant Michaelson.

The court next turns to the plaintiff's chief argument that defendant Michaelson consented to the jurisdiction of this court.  That is, the plaintiff claims that the fee agreement, between himself[4] and the co-defendants, the Albers, including the forum-selection clause therein, applies equally to defendant Michaelson because the agreement explicitly states that the courts of the District of Columbia have exclusive jurisdiction over any dispute or litigation arising out of the agreement.  Pl.'s Opp'n to MTD at 13, 23.

Defendant Michaelson argues that he was not a party to and is therefore not bound by the Fee Agreement between the plaintiff and the co-defendants, the Albers, which contains a forum selection clause.  Def. Michaelson's MTD at 5.  He further argues that the forum selection clause is not enforceable against him, a third party, and that there is no authority for such a proposition. Def. Michaelson's Reply at 4.

In determining the issue of personal jurisdiction over a non-resident defendant, this court must ascertain if the defendant has already consented to the personal jurisdiction of this court.  In this case, the issue is whether the forum selection clause in the contractual agreement is enforceable against defendant Michaelson.  The plaintiff makes a bald assertion that the contract is enforceable against a third party and defendant Michaelson is therefore obligated to subject

---

[4]     The court notes that for the purposes of ascertaining diversity jurisdiction on the evidence currently before it, it regards the plaintiff as the individual named, but pending the outcome of arbitration and information gleamed therefrom, may later inquire as to the real party in interest.

himself to the jurisdiction of this court for any dispute or litigation arising out of the Fee

Agreement.  The court is not persuaded by the plaintiff's argument.  In fact, the plaintiff has

failed to allege specific facts connecting the defendant with the forum state and his arguments are

grounded on "bare allegations or conclusory statements."  *Schwartz v. CDI Japan, Ltd.*, 938 F.

Supp. 1, 4 (D.D.C. 1996).  Under contractual law, a contract is enforceable against a third party if

the third party is the intended beneficiary.  *See* 9-41 Corbin on Contracts § 776.   In this case, the

court concludes by looking at the four-corners of the contractual agreement that the parties to the

contract - the plaintiff and the Albers - did not intend defendant Michaelson to be a beneficiary.

Thus, while a forum selection clause in a contract agreement is valid and enforceable if it is "not

obtained through fraudulent or coercive means [and] is not unconscionable or contrary to public

policy," *Nat'l Dev. Corp. v. Fenetres MQ*, 1998 U.S. Dist. LEXIS 9768 (D.D.C. 1998), the

forum selection clause in the case at hand is unenforceable against the third party, defendant

Michaelson.  *See* 9-41 Corbin on Contracts § 776.

Finally, the plaintiff contends that the laws of the District of Columbia apply to the

defendant since he "acts as an agent of the Albers" and his actions resulted in injuries to the

plaintiff.  Pl.'s Opp'n to MTD at 18, 22.  Under agency principles, an authorized agent's acts may

be attributed to the principal for jurisdictional purposes.  *See Daynard v. Ness, Motley, Loadholt,*

*Richardson & Poole, P.A.*, 290 F.3d 42, 55-60 (1st Cir. 2002); *see, e.g., Williamson v. Petrosakh*

*Joint Stock Co.*, 952 F. Supp. 495, 498 (S.D. Tex. 1997) (stating that actions by agents may be

used to assert jurisdiction over a principal if an agency relationship is established).  Where, as

here, the plaintiffs can at best argue that defendant Michaelson acted as an agent for his clients,

the Albers, then the actions of the agent, defendant Michaelson can be used to assert jurisdiction

over the principals, the Albers, and not vice versa.  The plaintiff, however, cites this court's

decision in *Schwartz*, to assert that the agency principles confer jurisdiction over defendant Michaelson.  Pl.'s Opp'n to MTD at 22-23 (citing *Schwartz*, 938 F. Supp. 1).  The plaintiff's reliance on this case is misplaced.  In *Schwartz*, the court held that the non-resident defendant had transacted business in the District of Columbia because he had co-signed the assignment of the contract which called "for the performance of work within the District."  *Schwartz*, 938 F. Supp. at 6.  Here, defendant Michaelson has neither co-signed the fee agreement nor has he performed any work in the District.  Therefore, this court concludes that it cannot exercise jurisdiction over the defendant on agency principles.

In sum, the plaintiff fails to persuade the court that defendant Michaelson consented to this court's jurisdiction or that agency principles somehow bestow the court with the power to exercise jurisdiction.  Because the plaintiff fails to shoulder his burden, the court grants defendant Michaelson's motion to dismiss for lack of personal jurisdiction.

**B.    The Defendants' Notices of Stay, Treated by the Court as a Collective Motion to Stay**

From the outset of this litigation, all three defendants filed a notice of automatic stay in response to the original complaint, as well as in response to the amended complaint.  *See* Def. D. Albers's Notice of Automatic Stay dated Jan. 1, 2004; Def. R. Albers's Notice of Automatic Stay, dated Jan. 1, 2004; Def. Michaelson's Notice of Automatic Stay dated Jan. 1, 2004; Def. D. Albers's Notice of Automatic Stay, dated May 3, 2004; Def. R. Albers's Notice of Automatic Stay, dated May 3, 2004; Def. Michaelson's Notice of Automatic Stay, dated May 3, 2004.  This lawsuit involves an attorney fee dispute, which is currently being arbitrated in California. Pursuant to California law, arbitration is mandatory where the client in an attorney fee dispute elects for arbitration.  Accordingly, the court stays the case pending the completion of arbitration in California.

### 1.    Legal Standard for Stay

A trial court has broad discretion to stay all proceedings in an action pending the resolution of independent proceedings elsewhere.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Airline Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis*, 299 U.S. at 254-55).  Indeed, "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979).

### 2.    The Court Stays the Remainder of This Litigation Pending the Completion of Arbitration in California

The instant case involves, in part, a fee dispute arising out of an attorney-client relationship that originated in California between the plaintiff attorney and the defendant clients.  *See generally* Am. Compl.  The California Business and Professions Code ("Cal. Bus. & Prof. Code"), §§ 6200, *et seq.*, provides the statutory procedure for resolving attorney-client fee disputes.  *See Meis and Waite v. Parr, et al.*, 654 F. Supp. 867, 868 (N.D. Cal. 1987) (citing Cal. Bus. & Prof. Code §§ 6200, *et seq.*).  Specifically, if there is an attorney-client fee dispute, the client has a statutory right to elect arbitration to resolve the fee dispute, which then becomes mandatory for the attorney.  Cal. Bus. & Prof. Code §§ 6200(b), 6200(c), 6201; *see also Meis and Waite*, 654 F. Supp. at 686.  The policy purpose for these statutes is to "alleviate[s] 'the disparity in bargaining power in attorney fee matters which favors the attorney by providing an effective inexpensive remedy to a client which does not necessitate the hiring of a second

attorney.'" *Meis and Waite*, 654 F. Supp. at 686 (quoting *Manatt, Phelps, Rothenberg & Tunney v. Lawrence*, 151 Cal.App.3d 1165, 1175 (Cal. App. 2d Dist. 1984)).  According to the Cal. Bus. & Prof. Code, an automatic stay suspends all such proceedings; specifically, "[u]pon filing and service of the request for arbitration, the action or other proceeding shall be automatically stayed until the award of the arbitrators is issued or the arbitration is otherwise terminated."  Calif. Bus. & Prof. Code, § 6201(c).

On September 4, 2003, defendants D. Albers and R. Albers, as former clients of the plaintiff lawyer, invoked their statutory right to mandatory arbitration for an attorney-client fee dispute pursuant to Calif. Bus. & Prof. Code § 6201.  Prior to this, defendant Michaelson, as the Albers' new attorney, informed the plaintiff that the Albers intended to initiate the mandatory arbitration.  *See* Def. Michaelson's Opp'n to Sanctions, Michaelson's Decl., Ex. A. The defendants further aver that the Albers filed a petition for fee arbitration with the Los Angeles County Bar Association's Dispute Resolution Services on September 20, 2003, also forwarding a copy of this petition to the plaintiff.  Def. Michaelson's Opp'n to Mot. For Sanctions ("Def. Michaelson's Opp'n to Sanctions"); Michaelson Decl. ¶ 3.  On December 8, 2003, the plaintiff filed the present action in this court.  *See generally* Am. Compl.  The very next day, the Dispute Resolution Services forwarded the plaintiff notification of the automatic stay and its power to halt any court proceedings related to the fee dispute, such as the instant one.  Def. Michaelson's Opp'n to Sanctions, Attach. Letter dated Dec. 9, 2003 (stating, on behalf of the Los Angeles County Bar Association, Attorney-Client Mediation and Arbitration Services, that "[u]nder Business and Professions Code 6201, subdivision (c), when a client commences arbitration of a fee dispute, any court action between you [Mr. Naegele] and the client [the Albers] concerning the fee dispute is automatically stayed.  The automatic stay arises without necessity of court

18

order.  However, it is your responsibility not to violate the stay, and if appropriate, to notify the court of the stay").

The court recognizes that states are generally responsible for the regulation of lawyers. *See Leis v. Flynt*, 439 U.S. 438, 442 (1979) (stating that "[s]ince the founding of the Republic, the licensing and regulation of lawyers has been left exclusively to the States and the District of Columbia within their respective jurisdictions.  The States prescribe the qualifications for admission to practice and the standards of professional conduct.  They also are responsible for the discipline of lawyers").  The court further recognizes California's substantial interest in providing clients with prophylactic tools to deal with attorney-client fee disputes, that is, with an "effective inexpensive remedy . . . which does not necessitate the hiring of a second attorney." *Meis and Waite*, 654 F. Supp. at 686 (citation omitted).  For litigation to occur simultaneously with such arbitration would not only frustrate California's policy reasons for these statutes, but would completely defeat them.  *See e.g.*, *id*.  Because the plaintiff is an attorney licensed to practice law in California and the events that gave rise to this fee dispute and the instant ligation also arose in California, the court stays the litigation of the attorney-client fee dispute pending the completion of arbitration in California.

The plaintiff has brought numerous other counts against the defendants, namely, tortious interference, conspiracy, and breach of contract.  Am. Compl.¶¶ 11, 13, 15, 23-24, 28-29, 36, 42-43 & 47-48.  Because these counts are dependent on the outcome of the fee dispute, the court cannot sever them into separate proceedings without frustrating the above-mentioned policy reasons for California's mandatory arbitration of fee disputes.  Furthermore "litigating essentially the same issues in two separate forums is not in the interest of judicial economy or in the parties' best interests." *Nat'l Shopmen Pension Fund v. Folger Adam Sec., Inc.*, 2002 U.S. Dist. LEXIS

3079, *3 (D.D.C. Feb. 11, 2002); *see also Airline Pilots Ass'n*, 523 U.S. at 879 n.6.  The court

also notes that there are remaining questions, especially regarding the proper amount-in-

controversy and the real party in interest, that the current arbitration in California may impact.

Given that the fee in controversy is a central issue to this case, the court concludes that all of the

plaintiff's counts fall under the umbrella of the stay pending the completion of arbitration in

California.

Accordingly, the court stays the remainder of this case pending the completion of the

arbitration in California.  The parties are not to file any motions in this case until so directed by

this court.  Within 30 calendar days of the completion of the arbitration proceedings in

California, the parties are hereby directed to submit a joint status report informing the court of

the outcome of the arbitration proceedings, whether they wish to continue with this case in this

venue, and their proposed briefing schedule and deadlines for how this case will proceed from

that point forward, if at all.

### C.    The Plaintiff's Motion to Strike

### 1.    Legal Standard for a Motion to Strike

The decision to grant or deny a motion to strike is vested in the trial judge's sound

discretion.  *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992) (citing

*Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)).  On its own

initiative or on a party's motion, the court may strike from a pleading any insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter in order to avoid the time, effort,

and expense necessary to litigate spurious issues.  FED. R. CIV. P. 12(f); *Fantasy, Inc. v. Fogerty,

Inc.*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  A

"pleading" includes a complaint, answer, reply to a counterclaim, answer to a cross-claim,

third-party complaint, or third-party answer.  FED. R. CIV. P. 7(a).  Motions to strike are a drastic

remedy, which courts generally disfavor.  *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine*

*Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (citing 5C FED. PRAC. & PROC. 2d § 1380

at 783); *accord Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991); *Mirshak v. Joyce*,

652 F. Supp. 359, 370 (N.D. Ill. 1987); *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn.

1979).

    In considering a motion to strike, the court will draw all reasonable inferences in the

pleader's favor and resolve all doubts in favor of denying the motion to strike.  *Wailua Assocs. v.*

*Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553-54 (D. Haw. 1998); *Joe Hand Promotions, Inc. v.*

*Nekos*, 18 F. Supp. 2d 214, 218 (N.D.N.Y. 1998); *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713,

715 (M.D. Fla. 1997).  Consequently, the burden lies with the movant.  *Vakharia v. Little Co. of*

*Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998).

## 2.    The Court Denies the Plaintiff's Motion to Strike

    The plaintiff requests that the court strike the "latest filings ," specifically, document

number 56, defendant Michaelson's response to the court's June 18, 2004 court order directing

the plaintiff to show cause that this court enjoys subject matter jurisdiction over this suit.  Pl.'s

Mot. to Strike.  As noted above, a motion to strike is a vehicle to strike a complaint, answer,

reply to a counterclaim, answer to a cross-claim, third-party complaint, or third-party answer.

FED. R. CIV. P. 12(f); FED. R. CIV. P. 7(a).  Because defendant Michaelson's response is not a

pleading, as defined in Federal Rule of Civil Procedure 7(a), and motions to strike apply only to

pleadings, the plaintiffs' motion to strike is improper.  *Pilgrim v. Trustees*, 118 F.3d 864, 868

(1st Cir. 1997) (stating that Rule 12(f) does not apply to motions or supporting affidavits); *Knight*

*v. U.S.,* 845 F. Supp. 1372, 1373-74 (D. Ariz. 1993) (stating that motions to strike solely apply to

pleadings, and not to motions); *Jones v. City of Topeka*, 764 F. Supp. 1423, 1425 (D. Kan. 1991)

(stating that motions to strike cannot be used to strike a plaintiffs' motion for partial summary

judgment because motions to strike are properly directed at pleadings).  Furthermore, even a

proper motion to strike is a drastic remedy and generally disfavored by courts.

*Stabilisierungsfonds,* 647 F.2d at 201 (citing 5C FED. PRAC. & PROC. 2d § 1380 at 783).  Because

the plaintiff is seeking to strike a response document, not a pleading, the court denies the

plaintiff's motion to strike.

### D.    The Court Denies the Plaintiff's Two Motions for Sanctions

The plaintiff filed two motions for sanctions.  First, on June 16, 2004, the plaintiff filed a

motion for sanctions against defendants R. Albers, D. Albers, and Michaelson.  *See generally*

Pl.'s Mot. for Sanctions.  Then, on November 11, 2004, the plaintiff filed a second motion for

sanctions against defendant Michaelson in connection with the plaintiff's motion to strike

defendant Michaelson's response to the court's June 18, 2004 court order directing the plaintiff

to show cause that this court enjoys subject matter jurisdiction over this suit.  *See generally* Pl.'s

Mot. for Sanctions dated Nov. 11, 2004 ("Pl.'s 2d Mot. for Sanctions").

### 1.    Legal Standard for Rule 11 Sanctions

Under Federal Rule of Civil Procedure 11, the court may impose sanctions on attorneys

or unrepresented parties if "a pleading, written motion, or other paper . . . [is] presented for any

improper purpose[;] . . . the claims, defenses, and other legal contentions therein are

[un]warranted by existing law[;] . . . the allegations and other factual contentions have [no]

evidentiary support[; or] the denials of factual contentions are [un]warranted on the evidence[.]"

FED. R. CIV. P. 11(b).  There are procedural and substantive requirements set forth in the Rule

that must be met before a court may impose sanctions.  *See Edmond v. United States Attorney*,

959 F. Supp. 1, 5 (D.D.C. 1997); *see generally* 2-11 Moore's Federal Practice § 11.23 (2004).

Rule 11 mandates that sanctions be imposed only "after notice and a reasonable opportunity to respond[.]"  FED. R. CIV. P. 11(c); *see also Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (discussing the due process requirements prior to imposing sanctions that "a sanctioned attorney must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter").  Rule 11 also requires that "[a] motion for sanctions . . . shall be served [on the opposing party] . . . and shall not be filed unless, within 21 days after service of [such] motion, . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."  FED. R. CIV. P. 11(c)(1)(A); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (holding that the court was precluded from granting the plaintiff's Rule 11 sanctions motion because the plaintiff failed to serve the motion on the defense counsel, which deprived the defense counsel of the 21 day safe harbor to withdraw or correct the alleged offending conduct); *U.S. v. BCCI Holdings (Luxembourg), S.A.*, 176 F.R.D. 1, 2 (D.D.C. 1997) (concluding that "the government's letter to petitioners' counsel [was] too tentative to provide the functional equivalent of 'safe harbor' notice").

Rule 11 also requires that a motion for sanctions be filed separately from other motions or requests and describe the specific conduct that is allegedly deserving of sanctions.  FED. R. CIV. P. 11(c)(1)(A); *see also Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1323, 1328 (2d Cir. 1995) (denying a request for sanctions that the movant included in his motion to dismiss); *S.E.C. v. Rivlin*, No. 99-1455, 1999 WL 1455758, at *6 (D.D.C. 1999) (denying Rule 11 sanctions because the motion was added to the end of the amended answer).

As for the substantive requirements of Rule 11, the court applies "an objective standard of

reasonable inquiry on represented parties who sign papers or pleadings." *Bus. Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 554 (1991). The imposition of Rule 11 sanctions is not something the court takes lightly; Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings. *Trout v. Garrett*, 780 F. Supp. 1396, 1428 (D.D.C. 1991) (noting that "the blunt instrument of sanctions against individual attorneys ought to be applied with restraint"). When a party's motion is "sufficiently well grounded and warranted by existing law," the party's failure to sustain his or her burden of proof on the motion "does not ipso facto violate the standards of Rule 11." *Bantefa v. Tyson*, No. CIV.A. 84-3937, 1987 WL 8710, at *1 (D.D.C. 1987) (denying the defendant's motion for sanctions that was filed in response to plaintiff's unsuccessful motion for relief from judgment). Similarly, where a party's "request for a stay of proceedings is based upon good faith assessments and due diligence efforts," sanctions are inappropriate under the substantive requirements of Rule 11. *Edmond*, 959 F. Supp. at 5 (finding that there was a lack of malicious motive in the defendant's request for a stay of the proceedings). On the other hand, a district court does not abuse its discretion when it imposes Rule 11 sanctions against a defendant whose counterclaims are designed primarily to harass the plaintiff. *Marina Mgmt. Services, Inc. v. Vessel My Girls*, 202 F.3d 315, 325 (D.C. Cir. 2000) (finding sanctionable a defamation counterclaim "which included allegations not necessarily integrally linked to the legitimacy of the debt recovery action"); *see also Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 43-44 (D.C. Cir. 1990) (affirming the district court's finding that the defendant "failed to make a reasonable inquiry into the factual basis of the amended complaint" and upholding the imposition of Rule 11 sanctions).

The court also has the authority to impose Rule 11 sanctions *sua sponte*. FED. R. CIV. P. 11(c)(1)(B). This inherent power, as the D.C. Circuit recognized, "guard[s] against abuses of the

judicial process." *Shepherd v. Am. Board. Co.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).  In this regard, Rule 11 serves the purpose of protecting the court from "frivolous and baseless filings that are not well grounded, legally untenable, or brought with the purpose of vexatiously multiplying the proceedings." *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (quoting *Cobell v. Norton*, 157 F. Supp. 2d 82, 86 n.8 (D.D.C. 2001)).  If the court determines that the motive and intent of the offending party is to harass the other party, or that a party has otherwise violated Rule 11(b), it has the inherent power to consider a Rule 11 sanctions motion *sua sponte* by issuing an order directing the offending party to show case why it has not violated Rule 11(b). FED. R. CIV. P. 11(c)(1)(B); *see McLaughlin v. Brandlee,* 602 F. Supp. 1412 (D.D.C.1985), *aff'd* 803 F.2d 1197 (D.C. Cir.1986).  When the court exercises its discretion and imposes sanctions *sua sponte*, it is not required to provide the party with the safe harbor period, as is required in Rule 11(c)(1)(A).  *Compare* FED. R. CIV. P. 11(c)(1)(B) (containing no explicit safe harbor provision) *with* FED. R. CIV. P. 11(c)(1)(A) (containing an explicit safe harbor provision); *see, e.g., Elliot v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) (distinguishing between the safe harbor required when sanctions are requested by motion and the absence of the safe harbor requirement when the court is acting *sua sponte*).  The court further notes that a frivolous Rule 11 sanction motion may itself be a violation of Rule 11.  FED. R. CIV. P. 11.

Finally, this court has the "discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation.  *Cobell*, 211 F.R.D. at 10 (citations omitted).  This court's grant or denial of a Rule 11 motion for sanctions is reviewed under an abuse of discretion standard.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *Geller*, 40 F.3d at 1303.

## 2.    Legal Standard for 28 U.S.C. § 1927 Sanctions

The court may also impose sanctions pursuant to 28 U.S.C. § 1927.  This statute provides that:

> [a]n attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The purpose of § 1927 is to allow the court "to assess attorney's fees against an attorney who frustrates the progress of judicial proceedings."  *U.S. v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992).  Before imposing sanctions on an attorney, the court must evaluate whether the attorney's conduct has been *"at least* reckless[.]"  *Wallace*, 964 F.2d at 1217. (emphasis in original).  "[U]nintended, inadvertent, and negligent acts[, however,] will not support an imposition of sanctions under section 1927." *Wallace*, 964 F.2d at 1219 (quoting *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990)).  For an act to be considered reckless misconduct, there must be a "conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man."  *Wallace*, 964 F.2d at 1220 (quoting Restatement (Second) of Torts § 500 cmt. g (1964)).  A showing by the moving party that counsel acted recklessly or deliberately "in the face of a known risk" is required.  *Healey v. Labgold*, 231 F. Supp. 2d 64, 68 (D.D.C. 2002) (citing *Wallace*, 964 F.2d at 1219).  Once the moving party has met its burden, then the court may impose sanctions under 28 U.S.C. § 1927.

## 3.    The Court Denies the Plaintiff's Motions for Sanctions
## Under Rule 11 and 28 U.S.C. § 1927

On May 20, 2004, the plaintiff served his motion for sanctions on all the defendants.  Pl.'s

Mot. for Sanctions at 1.  The plaintiff requests that the court impose sanctions on the defendants

for violations of Rule 11 as a result of their failure to withdraw or correct their filings at issue in

his motion.  *Id.* at 2.  Further, the plaintiff requests the court to sanction defendant Michaelson

under 28 U.S.C. § 1927 for multiplying the proceedings "unreasonably and vexatiously."  *Id.*

In his motion for sanctions, the plaintiff argues that the defendants' filings with this court

have violated Rule 11 and 28 U.S.C. § 1927 for the following reasons: (1) defendant Michaelson

"engaged in the unauthorized practice of law in the District" by preparing the filings for his co-

defendants, the Albers; (2) the defendants are misrepresenting themselves by availing themselves

of the automatic stay provision of Cal. Bus. & Prof. Code § 6201; (3) the defendants materially

misrepresented to the court by disputing the "consent" provisions of the Fee Agreement; and (4)

the defendants filed an Opposition to Plaintiff's Request for Entry of Default, despite the lack of

such provision under Rule 55, and caused unnecessary delay.  Pl.'s Mot. for Sanctions, Attach. A.

Defendant Michaelson argues that each of the defendants filed "all documents as 'Pro Se'

defendants."  Def. Michaelson's Opp'n to Mot. for Sanctions at 7.  Defendant D. Albers makes

the following arguments: (1) she filed a Notice of Automatic Stay pursuant to California

Business & Professions Code § 6201(c) and the court should honor the request for stay; (2) the

"court has the discretion to dismiss the action due to [the plaintiff's] failure to provide the

required notice" prior to the commencement of this action; and (3) all of the defendants are *pro

se* litigants.  Def. D. Albers' Opp'n to Mot. for Sanctions at 2-6.  Defendant R. Albers makes the

same arguments as defendant D. Albers.  Def. R. Albers' Opp'n to Mot. for Sanctions at 2-6.

The court analyzes a Rule 11 motion to determine if it meets both the procedural and

substantive fairness requirements called for by Rule 11.  The procedural fairness is determined by

the two-prong test of notice and an opportunity to respond.  FED. R. CIV. P. 11(c).  Here, the

plaintiff served all of the defendants with the motion for sanctions and in doing so, placed the

defendants on notice.  Under the safe harbor provisions of Rule 11, the defendants had 21 days to

either withdraw or correct the documents at issue.  *See* FED. R. CIV. P. 11(c)(1)(A).  But the

defendants chose not to withdraw or correct the challenged documents within the safe harbor

period.  Subsequently, the plaintiff filed the motion for sanctions, as a separate motion, with the

court and described the specific conduct of the defendants that the plaintiff believes is deserving

of sanctions.  Based on the legal framework set forth earlier, the court concludes that the

plaintiff's motion for sanctions satisfies procedural requirements of Rule 11.

　　　In addition to these procedural requirements, the moving party has the burden to meet the

substantive fairness requirement placed on it by the court.  In ascertaining substantive fairness,

the court applies an objective standard of reasonable inquiry.  *Bus. Guides, Inc.*, 498 U.S. at 554.

Using this standard, the court will evaluate the alleged "specific conduct" by the defendants that

the plaintiff argues are deserving of sanctions.

　　　First, the plaintiff alleges that defendant Michaelson prepared the filings for the Albers

and thus, engaged in "unauthorized practice of law" proscribed under the D.C. Rule of

Professional Conduct.  *See* D.C. Rule of Professional Conduct 5.5.  But the defendants rebut this

argument by stating that they are all *pro se* litigants.  Mere allegations are insufficient to support

a finding that defendant Michaelson prepared the filings for the Albers in this proceeding and

thereby violated the rules of professional conduct.  Thus, the court rejects the plaintiff's

allegation that defendant Michaelson is unlawfully practicing law and thus deserving of Rule 11

sanctions.

28

Second, the plaintiff alleges that the defendants are misrepresenting themselves by availing themselves of the automatic stay provision of Cal. Bus. & Prof. Code § 6201. The Albers argue that they filed a Notice of Automatic Stay pursuant to Cal. Bus. & Prof. Code § 6201(c) and that the court should honor their request to stay the current proceedings. This court has held that a party's good faith request stay of proceedings is not sanctionable under Rule 11. *See Edmond*, 959 F. Supp. at 5. Here, the Albers have initiated an arbitration proceeding in California against the plaintiff disputing the fees charged by the plaintiff for services rendered to the Albers. A request for stay of the proceedings based on an impending arbitration proceeding in another state can hardly be deemed as an action taken in bad faith. The court therefore concludes that the Albers' request for stay fails the substantive requirements of Rule 11 and therefore is not sanctionable.

In his motion for sanctions, the plaintiff highlighted defendant Michaelson's inappropriate use of the automatic stay, stating that the fee dispute and any related arbitration or stays are confined solely to the plaintiff and the defendants Albers. Pl.'s Mot. for Sanctions at 7-8, 14; Pl.'s Decl. in Support of Pl.'s Opp'n to the Mot. to Dismiss ¶ 8(D)(9). The court agrees, and the defendant attorney admits in his reply to the opposition to his motion to dismiss, that the defendant attorney cannot partake of the automatic stay given that he is not a party to that dispute. Def. Michaelson's Opp'n to Mot. for Sanctions at 4-5. However, as the court has already indicated, it elects to dismiss defendant Michaelson for an alternative reason: lack of personal jurisdiction. The court moreover notes that the plaintiff sought to hold defendant Michaelson bound by the forum selection clause in the fee agreement between the plaintiff and the Albers, a contract defendant Michaelson was not a party to. Pl.'s Opp'n to Def. Michaelson's

MTD, Ex.2 ¶ 6.  That is, the plaintiff represented to this court that defendant Michaelson should be bound by the contract signed by the Albers, but not enjoy the automatic stay provided by the California legislature for disputes arising out of this contract.

Next, the plaintiff argues that the defendants made material misrepresentions to the court by contesting the "consent" provisions of the Fee Agreement.  Pl.'s Mot. for Sanctions at 14. The fee agreement called for D.C. law to govern "the rights and obligations" of the parties to the agreement and the District of Columbia to serve as "venue for *any disputes* or litigations arising out of this agreement." *Id.* (emphasis in original).  The defendants contend, however, to the extent of their knowledge that the fee agreements were not executed.  Def. Michaelson's Opp'n to Mot. for Sanctions at 5.   In addition, they argue that even if the various fee agreements were executed, these documents do not prohibit fee arbitration in California.  Def. Michaelson's Opp'n to Mot. for Sanctions, Ex. F (Statement of Kirtley Thiesmeyer, Deputy Chair of the Attorney-Client Mediation and Arbitration Services Executive Committee of the Los Angeles County Bar Association).  Nothing in the defendants' decision to bring this attorney-client fee dispute for arbitration in California suggests that they acted in bad faith.  Accordingly, the court concludes that the defendants' have not made material misrepresentations to this court deserving of Rule 11 sanctions.

Finally, the plaintiff argues that the defendants filed an opposition to the plaintiff's request for entry of default, despite a lack of such provision under Rule 55, and caused unnecessary delay.  Pl.'s Mot. for Sanctions at 17.  The defendants, however, assert that their filings were "necessitated by Naegele's failure to honor the Notice of Automatic Stay[.]"  Def. Michaelson's Opp'n to Mot. for Sanctions at 6.  This court has held that when a party's motion is

30

"sufficiently well grounded and warranted by existing law," the party's failure to sustain the burden of proof on the motion "does not ipso facto violate the standards of Rule 11." *Bantefa*, 1987 WL 8710, at *1.  The court concludes, therefore, that the defendants' filing of an opposition to the plaintiff's Request for Entry of Default is not sanctionable under Rule 11.

The court's analysis is not over yet.  The plaintiff petitions the court to impose sanctions on defendant Michaelson under 28 U.S.C. § 1927 because Michaelson allegedly made frivolous factual and legal representations and encouraged the Albers to do the same.  Pl.'s Mot. for Sanctions at 18.  Under D.C. law, however, sanctions may be imposed only for reckless conduct, not negligence or inadvertent acts.  *See Wallace*, 964 F.2d at 1219.  The plaintiff bears the burden of showing that opposing counsel acted recklessly, namely that opposing counsel deliberately acted in disregard of a danger or known risk to others.  *Healey*, 231 F. Supp. 2d at 68.  Here, the plaintiff only made allegations concerning the defendants' filings as being "unreasonable" and "vexatious," rather than making an attempt to prove his case for recklessness against defendant Michaelson.  Defendant Michaelson rebuts by arguing that his filings have been "defensive" to the plaintiff's pleadings and motions.  Def. Michaelson's Opp'n to Mot. for Sanctions at 6.  Based on these arguments, the court concludes that the plaintiff failed to meet his burden of proof.  The court also concludes that defendant Michaelson's behavior does not rise to the level of recklessness, as required under D.C. law, to be subject to sanctions under 28 U.S.C. § 1927.

### 4.   The Court Denies the Plaintiff's Second Motion for Sanctions

The plaintiff, in his second motion for sanctions, submits arguments repetitious of his first motion for sanctions, *compare* Pl.'s Mot. for Sanctions *with* Pl.'s 2d Mot. for Sanctions, with the additional argument that defendant Michaelson inappropriately filed his response to the

court's June 18, 2004 order.  *See generally* Pl.'s 2d Mot. for Sanctions.  As stated above, the

plaintiff's motion to strike defendant Michaelson's response document is inappropriate and

denied by the court.  *See supra* Discussion III.C.  Furthermore, the court denies the plaintiff's

second motion for sanctions for the same reasons it denies the plaintiff's motion for sanctions.

*See supra* Discussion III.D.  The court seizes this opportunity to warn the parties that their

repeated filing of duplicative motions border on the very tactics that abuse the judicial system

and multiply the proceedings unreasonably and vexatiously.  *See* FED. R. CIV. P. 11; 28 U.S.C. §

1927.


### III.  CONCLUSION

For all of these reasons, the court denies defendant Michaelson's motion to dismiss for

lack of subject matter jurisdiction, but grants his motion to dismiss for lack of personal

jurisdiction; denies both of the plaintiff's motions for sanctions; denies the plaintiff's motion to

strike the defendants' notices of automatic stay; denies the plaintiff's motion to strike defendant

Michaelson's response document; grants the defendants Albers' motion to stay; and denies all

remaining motions as moot.  An order directing the parties in a manner consistent with this

Memorandum Opinion is separately and contemporaneously issued this 3rd day of January 2005.


RICARDO M. URBINA
United States District Judge