## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY D. NAEGELE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 03-2507 (ABJ) |
| DEANNA J. ALBERS, *et al.*, | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Timothy D. Naegele brought this diversity action against Deanna J. Albers and Raymond H. Albers ("the Albers defendants"), former defendant Lloyd J. Michaelson,[1] and unnamed individuals "Does 1–10" ("the Doe defendants"), asserting thirteen common law claims sounding in contract and tort. 2d Am. Compl. [Dkt. # 109]. The Albers defendants have moved to dismiss, contending that several of plaintiff's claims are barred by res judicata in light of the decision of the California Court of Appeals in *Albers v. Naegele*, No. B240455, 2013 WL 5945676

---

1    Defendant Michaelson was dismissed from this case in January 2005, when the court then assigned to the matter determined that plaintiff's first amended complaint failed to show that the court could exercise personal jurisdiction over Michaelson. *Naegele v. Albers (Naegele I)*, 355 F. Supp. 2d 129, 137–39 (D.D.C. 2005). Plaintiff then named Michaelson again as a defendant in his second amended complaint. 2d Am. Compl. [Dkt. # 109] ¶ 5. But the court at that juncture noted that the second amended complaint "offers no new jurisdictional facts that would establish that Michaelson is now subject to personal jurisdiction in the District of Columbia, and thus that would justify hauling Michaelson back into this dispute." *Naegele v. Albers (Naegele IV)*, 958 F. Supp. 2d 17, 20 n.2 (D.D.C. 2013). Accordingly, the court "agree[d] that Michaelson rightly remains dismissed as a defendant from this action." *Id.* After the case was transferred to this Court, it reiterated that holding in a minute order on November 5, 2014, and it ordered plaintiff not to refer to Michaelson as a defendant in any future pleadings. Minute Order (Nov. 5, 2014). Plaintiff appealed that determination to the D.C. Circuit, Notice of Appeal [Dkt. # 132], but his appeal was denied for lack of a final order. Order (D.C. Cir. Feb. 5, 2015) [Dkt. # 142]. Thus, Michaelson, who is no longer a defendant to this action, is mentioned in this memorandum opinion only as a former defendant and as a party to relevant prior proceedings.

(Cal. Ct. App. Nov. 6, 2013).  Defs.' Mot. for an Order of Dismissal [Dkt. # 140] ("Defs.' 3d Mot. to Dismiss"); Defs.' Mem. of P. & A. in Supp. of Defs.' 3d Mot. to Dismiss [Dkt. # 140] ("Defs.' Mem.") at 2.  The Albers defendants further argue that the Court lacks subject matter jurisdiction over the remaining claims against them and that there is no basis for exercising personal jurisdiction over them in the District of Columbia.  Defs.' Mem. at 3–7.  Plaintiff opposed the motion, Pl.'s Resp. to Court's Order [Dkt. # 143] ("Pl.'s Opp."), and at the Court's direction, he also filed a supplemental pleading regarding the applicability of the res judicata doctrine to his claims.  Pl.'s Resp. to Court's Order [Dkt. # 138].[2]

Upon review of the parties' pleadings, the prior decisions in this and related cases, and the relevant case law, the Court will grant the Albers defendants' motion and dismiss Counts I through VI against them as precluded by res judicata.  Further, the Court finds no basis for the exercise of personal jurisdiction over the Albers defendants with regard to the remaining claims against them.  And because the Court finds that Counts V and VII through XIII of the second amended complaint fail to state a plausible claim against the Doe defendants, it will dismiss those counts pursuant to Federal Rule of Civil Procedure 12(b)(6).  Accordingly, the case will be dismissed in its entirety.

## BACKGROUND

This action, which began in 2003, has a long and complex factual and procedural history which has been discussed at length in prior opinions of this court and others.  *See, e.g.*, *Naegele v. Albers* (*Naegele III*), 940 F. Supp. 2d 1, 2–6 (D.D.C. 2013); *Naegele v. Albers* (*Naegele IV*), 958 F. Supp. 2d 17, 19–22 (D.D.C. 2013); *Albers*, 2013 WL 5945676, at *2–*6.  The Court takes

---

2       Because the arguments advanced in plaintiff's supplemental res judicata pleading are reproduced nearly verbatim in his opposition to the Albers defendants' motion to dismiss, the Court will cite only to plaintiff's opposition throughout its opinion, although it considered fully the arguments advanced on the res judicata issue in both of plaintiff's pleadings.

judicial notice of its own docket and it also relies upon those prior opinions for the purpose of recounting the history of this action. *See Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (stating that, in deciding a motion to dismiss, a court may take "'judicial notice of facts on the public record'" by "consult[ing] the relevant opinions" in prior cases), quoting *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.3d 1221, 1228 (D.C. Cir. 1993).  The Court also provides the relevant statutory framework for background.

## I.      Statutory Framework

This case arises out of an attorney-client fee dispute between plaintiff and the Albers defendants related to a lawsuit filed by plaintiff on the Albers defendants' behalf in California federal court.  Such fee disputes are governed by the California Mandatory Fee Arbitration Act ("MFAA"), Cal. Bus. & Prof. Code § 6200 *et seq.*, and the provisions of that statute form part of the backdrop of this case:

> The MFAA was first proposed by the Board of Governors of the State Bar of California in 1976 when, finding that disputes concerning legal fees were the most serious problem between members of the bar and the public, the board sought to create a mechanism for arbitrating disputes over legal fees and costs.  Recognizing the disparity in bargaining power in attorney fee matters which favors the attorney in dealings with infrequent consumers of legal services, that many clients could not afford hiring additional counsel to litigate fee disputes in the civil courts, and that previous schemes that called for voluntary arbitration were ineffective, the Legislature enacted the MFAA.

*Schatz v. Allen Matkins Leck Gamble & Mallory LLP*, 198 P.3d 1109, 1113 (Cal. 2009) (internal citations and quotation marks omitted).

Under the MFAA, "when there is a fee dispute between an attorney and a client, the client may choose to submit the matter to arbitration by a local bar association." *Id.* at 1111.  "[A] client may invoke the MFAA and proceed to arbitration despite the absence of any prior agreement to do so." *Id.* at 1114.  Section 6200(c) of the MFAA provides that "arbitration under this article

shall be voluntary for a client and shall be mandatory for an attorney if commenced by a client."

Cal. Bus. & Prof. Code § 6200(c).  "In other words, whereas a client cannot be forced under the

MFAA to arbitrate a dispute concerning legal fees, at the client's election an unwilling attorney

can be forced to do so."  *Schatz*, 198 P.3d at 1114.

Pursuant to the MFAA, an "arbitration will be binding . . . only if the attorney and client

so agree in writing after the dispute has arisen."  *Id.* at 1111; *see also* Cal. Bus. & Prof. Code

§ 6204(a).  "Otherwise, either party may request a trial de novo within 30 days after the arbitration

has concluded."  *Schatz*, 198 P.3d at 1111; *see also* Cal. Bus. & Prof. Code § 6204(a).  But the

right to a trial de novo is subject to an important exception:  a "party shall not be entitled to a trial

after arbitration" if that party "willfully fails to appear at the arbitration hearing in the manner

provided by the rules adopted by the board of trustees."  Cal. Bus. & Prof. Code § 6204(a).  "The

determination of willfulness shall be made by the court," and "[t]he party who failed to appear at

the arbitration shall have the burden of proving that the failure to appear was not willful."  *Id.*  In

making its determination, the court may consider any findings made by the arbitrators on the

subject of a party's failure to appear."  *Id.*

## II.    Factual and Procedural History

Plaintiff Naegele is an attorney, litigating this case *pro se*, who formerly represented the

Albers defendants in a lawsuit in the United States District Court for the Central District of

California, and later, on appeal before the Ninth Circuit ("the California litigation").[3]  2d Am.

Compl. ¶¶ 3, 7–9.  The parties entered into a fee agreement, subject to three written addenda, with

---

3       The California litigation was dismissed on standing grounds, and that dismissal was
affirmed by the Ninth Circuit.  Order, *Albers v. Brooks*, No. 2:99-cv-03573-GAF-SH, (C.D. Cal.
Aug. 28, 2002) [Dkt. # 140] (dismissing case); *Albers v. Guthy-Renker Corp.*, 92 F. App'x 497
(9th Cir. 2004) (affirming dismissal).

respect to the California litigation.  *Id.* ¶ 8; *see also* Attach. A to Decl. of Timothy D. Naegele in

Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 42-1] ("Fee Agreement").[4]   The Fee

Agreement and the addenda each state that the "venue for any disputes or litigation arising out of

this agreement shall be in a court of the District of Columbia and/or in the United States District

Court for the District of Columbia," and that the Albers defendants "hereby consent to the

jurisdiction of such court or courts with respect to any disputes or litigation arising out of this

agreement." Fee Agreement at ECF 4, 8, 11, 16.[5]

A.   **The Albers defendants seek mandatory fee arbitration pursuant to the MFAA.**

A dispute arose between the parties regarding the fees plaintiff charged for the California

litigation, and the Albers defendants invoked their statutory right to mandatory fee arbitration

under the MFAA.  *Naegele III*, 940 F. Supp. 2d at 2.  The Albers defendants were represented by

former defendant Michaelson in the fee arbitration, and he notified plaintiff by a letter dated

August 28, 2003 of the Albers defendants' intention to arbitrate the fee dispute.  *Id.* at 2–3.  The

Los Angeles County Bar Association Dispute Resolution Services ("DRS") – the entity tasked

with administering fee arbitrations under the MFAA – forwarded a copy of arbitration petition to

plaintiff on September 22, 2003.  *Id.* at 3.  Plaintiff acknowledged receipt of the Michaelson letter

and the DRS notice via email on October 3, 2003.  *Naegele IV*, 958 F. Supp. 2d at 20.

---

4      Plaintiff attached the Fee Agreement to his initial complaint and he incorporated it by reference in his second amended complaint. Exs. A–D in Supp. of Compl. [Dkt. ## 1-1, 1-2, 1-3, 1-4]; 2d Am. Compl. ¶ 8.  The Court therefore cites to and relies upon the Fee Agreement in ruling on the Albers defendants' motion to dismiss. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.").  However, because the version of the agreement plaintiff attached to his complaint was unsigned, the Court instead cites to a signed version provided by plaintiff in a later pleading.  *See* Fee Agreement.

5      For ease of reference, where the internal pagination of a pleading, attachment, or exhibit is not clear, the Court cites to the ECF page number.

**B.     Plaintiff files this federal action against the Albers defendants in the District of Columbia.**

The initiation of fee arbitration pursuant to the MFAA precludes the concurrent prosecution of any court action surrounding the fee dispute, and any judicial action that was pending prior to the commencement of fee arbitration is "automatically stayed until the award of the arbitrators is issued or the arbitration is otherwise terminated."  Cal. Bus. & Prof. Code § 6201(c).  Despite this requirement and with the knowledge that the Albers defendants had initiated arbitration proceedings, plaintiff filed the complaint that launched the instant case in this court on December 8, 2003, on the grounds that the forum selection clause in the Fee Agreement provided that "any disputes or litigation arising out of this agreement shall be in a court of the District of Columbia and/or in the United States District Court for the District of Columbia."  *Naegele III*, 940 F. Supp. 2d at 3; *see also* 2d Am. Compl. ¶ 8; Fee Agreement at ECF 4.  In response, on January 5, 2004, the Albers defendants and former defendant Michaelson sought an automatic stay of the District of Columbia proceedings pursuant to California Business and Professions Code § 6201(c).  Notices of Automatic Stay Under Cal. Bus. & Prof. Code § 6201(c) [Dkt. ## 2–4].

Shortly thereafter, on April 20, 2004, plaintiff filed an amended complaint, Am. Compl. [Dkt. # 7], which caused the Albers defendants and Michaelson to file a second round of requests for an automatic stay on May 3, 2004.  Notices of Automatic Stay Under Cal. Bus. & Prof. Code § 6201(c) [Dkt. ## 19–21].

On June 18, 2008, while those requests were pending, plaintiff was ordered to show cause that the court had subject matter jurisdiction over the dispute, in light of questions raised as to the diversity of citizenship between the parties.  Order (June 18, 2004) [Dkt. # 35].  On January 3, 2005, after the parties had briefed the issue, the court ruled that it could properly exercise subject matter jurisdiction over the dispute based on the record before it, but it dismissed defendant

Michaelson for lack of personal jurisdiction and it granted the Albers defendants' request for a stay pending the outcome of the California arbitration proceedings. *Naegele v. Albers* (*Naegele I*), 355 F. Supp. 2d 129 (D.D.C. 2005).

### C.    The arbitration panel issues an award in the Albers defendants' favor.

Meanwhile, the fee arbitration proceedings in California had commenced. *Naegele III*, 940 F. Supp. 2d at 3. Naegele objected to the DRS panel's exercise of jurisdiction over the fee dispute on the grounds that the forum selection clause in the Fee Agreement gave the District of Columbia exclusive jurisdiction. *Id.* at 3 n.2. DRS overruled plaintiff's objection and concluded that it had jurisdiction to arbitrate the dispute under the MFAA. *Id.* Plaintiff appealed that finding of jurisdiction to the California Supreme Court, which denied his petition for review on February 16, 2005. *Id.*

The DRS panel held an arbitration hearing on November 17, 2004, and Naegele failed to appear, although he was represented by an attorney. *Naegele IV*, 958 F. Supp. 2d at 21. The panel issued an award in the Albers defendants' favor on January 14, 2005. *Naegele III*, 940 F. Supp. 2d at 3–4. It reviewed the reasonableness of the fees paid to plaintiff in connection with the California litigation, which amounted to $735,481.32, along with the $82,000.00 promissory note plaintiff had secured from the Albers defendants in anticipation of his work on the appeal before the Ninth Circuit. *Id.* The panel made the following determinations:

1.    The panel finds that the total amount of fees and other costs which should have reasonably and necessary [sic] been charged in this matter are $8500.00 (20 hours at $425/hr.).

2.    The clients (Albers) have overpaid (Naegele) $726,981.32 ($735,481.32 − $8500.00).

3.    Naegele shall refund clients (Albers) the sum of $726,981.32 forthwith.

4.    The panel finds Naegele willfully failed to appear at the hearing for nonbinding arbitration and produce documents as required under the Rules, and should not be entitled to a new trial after arbitration pursuant to Rule 40 of the Rules For Conduct of Arbitration of Fee Disputes and Other Related Matters for the Los Angeles County Bar Association Dispute Resolution Services, Inc.

5.    All arbitration related fees and costs shall be paid or reimbursed by Respondent Naegele.

*Id.* at 4, quoting Ex. D to Decl. of Raymond H. Albers, II in Supp. of Defs.' Mot. for Order of Dismissal [Dkt. # 92-3] ("Arb. Award") at 10–11. The panel concluded that plaintiff's failure to appear personally at the arbitration hearing was willful. *Id.*, quoting Arb. Award. at 10 ("'The conduct of Naegele upon learning of the decision . . . that this panel did have jurisdiction to adjudicate the fee dispute between Albers and Naegele, in not appearing as he was compelled to do . . . was willful.'").

### D.    Plaintiff files a rejection of the arbitration award and a request for trial in the District of Columbia case.

On February 22, 2005, back in the District of Columbia proceedings, plaintiff filed a document entitled, "Rejection of Arbitration Award and Request for Trial," invoking California Business and Professions Code § 6204(b).[6] Rejection of Arb. Award & Request for Trial [Dkt. # 64]. Plaintiff asserted that "the arbitration award is a nullity as a matter of law" because "the arbitrators had no jurisdiction *ab initio* owing to a valid and binding forum-selection clause that provides for the District of Columbia's exclusive jurisdiction with respect to 'any disputes or litigation' arising between Plaintiff and the Albers." *Id.* at 2. Shortly thereafter, on April 20, 2005, the Albers defendants filed a motion to dismiss for lack of subject matter jurisdiction, arguing that

---

6    Section 6204(b) provides that a trial after arbitration must be initiated before the court in which an action is pending "by filing a rejection of arbitration award and request for trial after arbitration in that action within 30 days after service of notice of the award." Cal. Bus. & Prof. Code § 6204(b).

complete diversity between the parties was absent because plaintiff and the Albers defendants were both residents of California, and for lack of personal jurisdiction.  Defs.' Mot. for Order of Dismissal [Dkt. # 68].  On August 8, 2005, the court denied plaintiff's request for a trial for the time being:  "Because the court is on notice of the plaintiff's objection to the arbitration award, and in light of the defendants' pending motion to dismiss, the court denies without prejudice the plaintiff's motion for trial."  Minute Order (Aug. 8, 2005).

On May 11, 2006, while the Albers defendants' motion to dismiss was still pending, plaintiff filed a motion to stay the District of Columbia case in light of criminal bankruptcy fraud charges brought against him by the United States Attorney for the District of Columbia relating to alleged misstatements plaintiff made in his bankruptcy filings.  Mot. to Stay [Dkt. # 87].  The court granted the motion on June 6, 2006.  Order (June 6, 2006) [Dkt. # 89].  Plaintiff was eventually acquitted of the criminal charges on February 27, 2008.  *United States v. Naegele*, 537 F. Supp. 2d 36 (D.D.C. 2008).

On April 14, 2008, the Albers defendants moved to lift the stay, and after no action was taken for more than nine months, they re-filed the motion.  Motion to Lift Stay [Dkt. ## 90, 91].  The stay was vacated on June 17, 2009.  Minute Order (June 17, 2009).  Nine more months passed without any developments until the Albers defendants renewed their still-pending motion to dismiss on March 31, 2010.  Defs.' Mot. for Order of Dismissal [Dkt. # 92] ("Defs.' 2d Mot. to Dismiss").  Less than two weeks later, plaintiff sought leave to file a second amended complaint, asserting five additional counts against the Albers defendants, the Doe defendants, and former defendant Michaelson stemming from their alleged involvement in the initiation of the criminal bankruptcy fraud proceedings against plaintiff.  Pl.'s Opp. to Defs.' 2d Mot. to Dismiss, Mot. for Sanctions, & Mot. for Leave to File 2d Am. Compl. [Dkt. # 93]; 2d Am. Compl. ¶¶ 49–64.

**E.     The Albers defendants petition the California Superior Court to confirm the arbitration award, and plaintiff seeks injunctive relief in this court.**

On January 13, 2009, while their request to lift the stay was still pending in this District, the Albers defendants petitioned the California Superior Court to confirm their arbitration award.[7] *Naegele III*, 940 F. Supp. 2d at 5.  Almost three years later, on December 23, 2011, plaintiff sought injunctive relief in this court, seeking a stay of the California action until the case in this District was resolved.  Mot. for Stay of State Court Proceedings & for Permanent Inj. Relief [Dkt. # 99]. In plaintiff's words, his delay in seeking injunctive relief was due to the fact that the confirmation proceedings "effectively sat dormant until a new judge was assigned to the case."  *Id.* at 5.

On February 16, 2012, before the court could rule on the injunction, plaintiff sought a temporary restraining order for the same relief.  App. for Temporary Restraining Order [Dkt. # 102] ("TRO Mot.").  By that date, the California Superior Court had already confirmed the Albers defendants' arbitration award, and it had directed them to submit a proposed judgment by no later than February 28, 2012.  *Naegele III*, 940 F. Supp. 2d at 5.  Plaintiff asserted that the temporary restraining order was necessary to prevent the entry of judgment in the California action, and he averred that "[o]nce the Albers and Michaelson have a judgment in hand, there will be no way to stop them and the Plaintiff will be irreparably injured."  Proposed Scheduling Order for Briefing on TRO Mot. [Dkt. # 103] at 2.

The court denied plaintiff's motion for a temporary restraining order on February 21, 2012, finding that he had failed to demonstrate a likelihood of success on the merits and that he was

---

7     The Albers defendants had previously filed a petition to confirm the arbitration award in Los Angeles Superior Court back in 2005, but they agreed to dismiss that petition without prejudice, in light of their motion to dismiss pending in this District.  *Naegele III*, 940 F. Supp. 2d at 5 n.3.  Ultimately, however, it seems that the Albers defendants were running up against a statute of limitations in California and, to preserve their rights, they refiled the confirmation petition in January 2009.  *Id.*

unable to articulate the requisite irreparable harm.  *Naegele v. Albers* (*Naegele II*), 843 F. Supp. 2d 123, 127–29 (D.D.C. 2012).  Plaintiff did not appeal.  Two days later, the Albers defendants filed a motion asking the court to rule on their motion to dismiss, which had been pending since March 31, 2010.  Request that the Court Rule on Defs.' 2d Mot. to Dismiss [Dkt. # 106].  Instead, on March 9, 2012, the court granted plaintiff's motion for leave to file a second amended complaint, and it denied the motion to dismiss as moot on the grounds that "plaintiff's amended complaint supersedes the original complaint."  Mem. Order (Mar. 9, 2012) [Dkt. # 107]; Minute Order (Mar. 9, 2012).

> **F.    The California Superior Court enters judgment in the Albers defendants' favor and plaintiff appeals to the California Court of Appeals.**

Back in California, on February 24, 2012, the Superior Court confirmed the arbitration award and entered a judgment of $781,831.25 in favor of the Albers defendants, which included their arbitration fees and court costs.  *Naegele III*, 940 F. Supp. 2d at 5–6.  Plaintiff appealed that decision to the California Court of Appeals on April 16, 2012.  *Id.* at 6.

> **G.    The District of Columbia court denies plaintiff's renewed request for trial and stays the federal action pending the resolution of the California appeal.**

On April 9, 2012, plaintiff moved for reconsideration of the District of Columbia court's denial of his rejection of the arbitration reward and request for a new trial.  Mot. for Reconsid. [Dkt. # 110].  The case was then transferred to a new District judge who, on April 18, 2013, ordered plaintiff to show cause "as to why the Court should not stay this action in its entirety pending the resolution of [the] parallel and/or overlapping California state court litigation surrounding the same

fee dispute at the center of this action." *Naegele III*, 940 F. Supp. 2d at 2.[8]  The court also ordered plaintiff to show cause "as to why the Court should not find that he 'willfully fail[ed] to appear at the arbitration hearing' before [DRS], within the meaning of California Business and Professions Code § 6204(a)."  *Id.*, quoting Cal. Bus. & Prof. Code § 6204(a).

On July 18, 2013, after the parties had briefed the issues, the court denied plaintiff's motion for reconsideration.  *Naegele IV*, 958 F. Supp. 2d at 26.  It found that plaintiff "willfully failed to appear at the arbitration hearing on November 17, 2004, which means that he is unable to pursue a trial de novo and that the award rendered by the arbitration panel is binding."  *Id.*, citing Cal. Bus. & Prof. Code §§ 6203(b), 6204(a) ("[I]f either party willfully fails to appear at the arbitration hearing in the manner provided by the rules . . . that party shall not be entitled to a trial after arbitration.").  The court then ordered the District of Columbia action stayed in its entirety pending the outcome of the California case.  *Id.*  Plaintiff appealed the denial of the motion for reconsideration to the D.C. Circuit on July 26, 2013.  Notice of Appeal [Dkt. # 124].

## H.   The California Court of Appeals affirms the Albers defendants' arbitration award.

On November 6, 2013, the California Court of Appeals affirmed the trial court's entry of judgment in favor of the Albers defendants and against plaintiff.  *Albers*, 2013 WL 5945676.  In

---

8      In questioning whether the case should be stayed, the court noted that the outcome of the California appeal "may have a preclusive impact on these proceedings."  *Naegele III*, 940 F. Supp. 2d at 8, citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005).  It observed that "under California law – which this Court would necessarily look to in determining whether to apply the doctrine of res judicata to a California judgment – it is well settled that a judicially-confirmed arbitration award is afforded res judicata effect."  *Id.* at 8–9, citing Cal. Civ. Proc. Code § 1287.4; *Dial 800 v. Fesbinder*, 12 Cal. Rptr. 3d 711, 724 (Cal. Ct. App. 2004) ("As a general matter, an arbitration award is the equivalent of a final judgment which renders all factual and legal matters in the award res judicata.").  Accordingly, the court warned that, if the Albers defendants' arbitration award "remains in place, the California judgment will likely have res judicata impact on at least some aspects of this action."  *Id.* at 9.

rejecting plaintiff's argument that the forum selection clause in the Fee Agreement deprived the

arbitration panel and the California courts of jurisdiction, the Court of Appeals looked to California

Supreme Court precedent examining the effect of pre-dispute contractual arbitration agreements

on the mandatory arbitration provision of the MFAA:

> [T]he MFAA's provision for a trial de novo after arbitration "does not
> purport to speak to whether the parties to a nonbinding MFAA arbitration
> may otherwise agree, or have agreed, on how to resolve the case if the
> MFAA arbitration leaves one or both parties dissatisfied." Rather, the
> statute contemplates that, *subject to the exception for a willful failure to
> attend the arbitration hearing*, "unless the parties agree to be bound by the
> MFAA arbitration, and thus to end the dispute then and there, the case may,
> following MFAA arbitration, proceed by normal means. . . . [T]hose normal
> means may include not only court litigation, but 'other proceedings' such
> as binding arbitration pursuant to a predispute agreement between the
> parties." Therefore, even where the parties have entered into a pre-dispute
> contractual arbitration agreement . . . the client retains the statutory right to
> arbitration under the MFAA. If the client properly invokes the right to
> arbitrate, the MFFA arbitration takes place first and any award issued by the
> arbitrators is non-binding unless the parties otherwise agree *or a party
> willfully fails to appear at the arbitration hearing*. Once the non-binding
> MFAA arbitration is completed, either party is free to seek enforcement of
> the preexisting arbitration agreement.

*Id.* at *8 (emphasis added), quoting *Schatz*, 198 P.3d at 1118–19. Applying those principles, the

Court of Appeals held that "the existence of a pre-dispute forum selection clause in a fee

agreement, in which a client agrees to litigate fee disputes in a designated judicial forum, does not

deprive the client of the right to arbitration under the MFAA." *Id.* Rather, it found that "[i]f the

client timely requests and maintains a MFAA arbitration, the forum selection clause only comes

into play after the arbitration proceedings have concluded." *Id.*

The California Court of Appeals also found that the trial court had jurisdiction to confirm

the arbitration award, despite the existence of the forum selection clause and plaintiff's filing of

the rejection of the arbitration award in the District of Columbia, *id.* at *9–*11, and that the Albers

defendants' petition to confirm the award was not time-barred. *Id.* at *12–*13. Accordingly, the

Court of Appeals confirmed the trial court judgment in the Albers defendants' favor.  *Id.* at *13.

Plaintiff did not appeal that decision.  *See* Docket, *Albers v. Naegele*, No S214758 (Cal. Ct.

App.), *available at* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=2&doc_

id=2011066&doc_no=B240455.

I.    **The D.C. Circuit remands plaintiff's appeal and the Supreme Court denies his petition for review.**

On June 23, 2014, the D.C. Circuit remanded the case to the District Court "for further

proceedings in light of *Albers v. Naegele*, 2013 WL 5945676 (Cal. Ct. App. Nov. 6, 2013)."

*Naegele v. Albers*, No. 13-7110, 2014 WL 4980898 (D.C. Cir. June 23, 2014).  The case was then

transferred to the undersigned.  Reassignment of Civil Case [Dkt. # 127].  On November 18, 2014,

plaintiff sought review from the United States Supreme Court of the D.C. Circuit's order

remanding the case, and he presented a host of questions regarding the enforceability of the forum

selection clause, the ability of the District Court and the D.C. Circuit to rely on the unpublished

California Court of Appeals decision, and the propriety of the dismissal of former defendant

Michaelson.  Pet. for Writ of Cert., *Naegele v. Albers*, 2014 WL 6467871 (U.S. Nov. 18, 2014).

The Supreme Court denied plaintiff's petition on January 26, 2015.  *Naegele v. Albers*, 135 S. Ct.

1177 (2015).  On the same day, the Albers defendants filed the motion to dismiss that is the subject

of this memorandum opinion, arguing that many of plaintiff's claims are barred by res judicata,

that subject matter jurisdiction is lacking, and that there is no basis for the exercise of personal

jurisdiction over them.  Defs.' 3d Mot. to Dismiss; Defs.' Mem.[9]

---

9    The Albers defendants' motion refers to both the first amended complaint, filed on April 20, 2004, and the second amended complaint, filed on March 9, 2012.  Defs.' Mem. at 1–2.  In light of their *pro se* status and because the substance of the motion focuses on the counts of the second amended complaint, the Court will treat the motion as properly addressed to that complaint.

## STANDARD OF REVIEW

### I.      Subject Matter Jurisdiction

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citations omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S.

64 (1987).   Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."   *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.   Personal Jurisdiction

It is the plaintiff who bears the burden of establishing personal jurisdiction over each defendant.   *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).   In order to survive a motion to dismiss for lack of personal jurisdiction, the "plaintiff must make a prima facie showing of the pertinent jurisdictional facts."   *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).   To establish that personal jurisdiction exists, the plaintiff must allege specific acts connecting the defendant with the forum.   *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 97–98 (D.D.C. 2008), citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).   A plaintiff "cannot rely on conclusory allegations" to establish personal jurisdiction.   *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003).

"A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction[.]"   *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).   However, "plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court.   Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain."   *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).   Any factual discrepancies should be resolved in favor of the plaintiff.   *Crane*, 894 F.2d at 456.   But, the Court need not treat all of the plaintiff's jurisdictional

allegations as true.  *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C.

2000).  "Instead, the court 'may receive and weigh affidavits and any other relevant matter to assist

it in determining the jurisdictional facts.'"  *Papst Licensing*, 590 F. Supp. 2d at 98, quoting *United*

*States v. Phillip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

III.    **Failure to State a Claim**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*,

the Supreme Court reiterated the two principles underlying its decision in *Twombly*:  "First, the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief

survives a motion to dismiss."  *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556.  A

pleading must offer more than "'labels and conclusions'" or a "'formulaic recitation of the

elements of a cause of action,'" *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed

liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all

inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the

plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Id.*; *see also Browning*, 292 F.3d at 242.  In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

I.      **The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.**

The Court begins with the threshold issue of whether it may properly exercise subject matter jurisdiction over this dispute.  The Albers defendants argue that subject matter jurisdiction is lacking because there is no diversity of citizenship between the parties:  they assert that they are citizens of California and that "plaintiff has resided at all relevant times in the State of California." Defs.' Mem. at 3–5.

This question has already been addressed in this action.  After former defendant Michaelson moved to dismiss this case under Rule 12(b)(1), the court specifically ordered plaintiff to show cause that the court possessed subject matter jurisdiction.  Order (June 17, 2004) [Dkt. # 35].  Plaintiff responded, declaring that he was a domiciliary of the state of Florida[10] and submitting as evidence "a copy of his Florida driver's license; a copy of the Declaration of Domicile and Citizenship filed with the Clerk of the Circuit Court of Monroe County, Florida; and

---

[10]    The Court notes that this assertion is conspicuously absent from plaintiff's initial complaint or any of his amended complaints, each of which state with regard to citizenship only that plaintiff's law firm, Timothy D. Naegele & Associates, conducts business in the District of Columbia.  Compl. [Dkt. # 1] ¶ 3; Am. Compl. ¶ 3; 2d Am. Compl. ¶ 3.

proof of his membership in the Ocean Reef Club, located in the Florida Keys." *Naegele I*, 355 F. Supp. 2d at 135; *see also* Decl. of Timothy D. Naegele in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 53] ¶¶ 2, 4–6; Attachs. to Decl. of Timothy D. Naegele in Supp. of Pl.'s Opp. to Def.'s Mot. to Dismiss [Dkt. # 50] (filed under seal).   In light of that evidence, the court was persuaded at that juncture "that the plaintiff's domicile is indeed Florida," and it found that "there is complete diversity between the plaintiff and the defendants." *Naegele I*, 355 F. Supp. 2d at 135. Where, as here, "appellants have not demonstrated that there is an intervening change in the law or that the previous decision was 'clearly erroneous and would work a manifest injustice,'" "[t]he court's prior ruling is law of the case and may not be revisited." *United States v. Krizek*, No. 01-5452, 2002 WL 1364262, at *1 (D.C. Cir. May 9, 2002), quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999).

The Albers defendants also argue that this Court lacks diversity jurisdiction because the amount in controversy does not exceed $75,000.00, as required by 28 U.S.C. § 1332(a).  Defs.' Mem. at 5–6.  But "[t]he amount in controversy is established at the commencement of the action." *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002), citing 28 U.S.C. § 1335(a). "Subsequent events reducing the amount in controversy will not divest the court of its jurisdiction." *Id.*, citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938) ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction."); *see also King v. Morton*, 520 F.2d 1140, 1145 (D.C. Cir. 1975) ("Normally, [the] jurisdictional amount is determined as of the filing of the complaint."). As the court found in ruling on former defendant Michaelson's Rule 12(b)(1) motion to dismiss, the amount in controversy requirement had been satisfied by plaintiff's claim for "$160,071.74 in legal fees and expenses incurred by his representation" of the Albers defendants on their appeal,

and by "plaintiff's punitive damages claim, which here is an amount of $4 million."  *Naegele I*,

355 F. Supp. 2d at 135–36.  Accordingly, the amount in controversy requirement was satisfied as

of the lawsuit's inception, and the Court concludes that it may properly exercise subject matter

jurisdiction pursuant to 28 U.S.C. § 1332 in this case.

## II.   The Court will dismiss Counts I through VI against the Albers defendants because they are barred by res judicata.

On June 23, 2014, the D.C. Circuit remanded this case to this Court "for further

proceedings in light of *Albers v. Naegele*, 2013 WL 5945676 (Cal. Ct. App. Nov. 6, 2013)," the

California Court of Appeals decision which confirmed the Albers defendants' arbitration award.

*Naegele*, 2014 WL 4980898.  In light of that mandate, and because "res judicata belongs to courts

as well as to litigants," *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997), the

Court ordered the parties to brief "whether Counts I through VIII of the second amended complaint

should or should not be dismissed on res judicata grounds."  Order (Dec. 2, 2014) [Dkt. # 136].[11]

The Albers defendants argue that "Counts I to VIII of the Second Amended Complaint all grow

out of the attorney-client fee dispute which has been resolved by a final judgment in California

Courts," and therefore, the Court should "give res judicata effect" to the California Court of

Appeals decision confirming their arbitration award.  Defs.' Mem. at 2, citing *Albers*, 2013 WL

5945676.  The Court agrees.

As a threshold matter, plaintiff contends that the California Court of Appeals decision

cannot properly be relied upon by the Albers defendants or considered by this Court because that

---

11      The Court notes that, while it ordered the parties to brief the applicability of res judicata to
Counts I through VIII, on the grounds that all stem from the same Fee Agreement, only Counts I
through VI were asserted against the Albers defendants.  Counts VII and VIII were brought against
former defendant Michaelson and the Doe defendants.  The Court will not dismiss those claims
against the Doe defendants on res judicata grounds, but for the reasons discussed in Section IV, it
will dismiss those counts for failure to state a claim pursuant to Rule 12(b)(6).

decision was unpublished.  Pl.'s Opp. at 7–8 ("[T]he California Rules Of Court prohibit parties

such as the Albers Defendants from citing or relying on unpublished decisions.").  It is true that

the California Court of Appeals decision was not selected for publication, and that California Rule

of Court 8.1115 provides that "an opinion of a California Court of Appeal . . . that is not certified

for publication or ordered published must not be cited or relied on by a court or a party in any other

action."  Cal. R. Ct. 8.1115(a).  But that rule also contains an explicit exception, which provides

that "[a]n unpublished opinion may be cited or relied on:  [w]hen the opinion is relevant under the

doctrines of law of the case, res judicata, or collateral estoppel."  Cal. R. Ct. 81115(b)(1).  Further,

because it is well established that "[t]he court may take judicial notice of public records from other

court proceedings" in determining whether res judicata applies, *Lewis v. Drug Enforcement*

*Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011), citing *Covad Commc'ns*, 407 F.3d at 1222, the

Court finds that it may consider the California Court of Appeals decision in ruling on the Albers

defendants' motion to dismiss on res judicata grounds.

    "The doctrine of res judicata prevents repetitious litigation involving the same causes of

action or the same issues." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946

(D.C. Cir. 1983).  Under that doctrine, also known as claim preclusion, "'a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or could

have been raised in that [prior] action.'" *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 4–

5 (D.D.C. 2011), quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002); *see also I.A.M. Nat'l*

*Pension Fund*, 723 F.2d at 949 (noting that res judicata "forecloses all that which might have been

litigated previously"), citing *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).  Therefore, a party

cannot escape application of the doctrine by raising a different legal theory or seeking a different

remedy in the new action that was available to him in the prior action.  *See Apotex, Inc. v. FDA*,

393 F.3d 210, 218 (D.C. Cir. 2004) (observing that "simply raising a new legal theory . . . is precisely what is barred by res judicata"). However, "[c]laim preclusion does not bar a 'plaintiff from later bringing claims that either could not have been anticipated when the first suit was filed or would have been utterly impracticable to join at that time.'" *Ramey v. Potomac Elec. Power Co.*, 580 F. Supp. 2d 40, 44 (D.D.C. 2008), quoting *U.S. Indus., Inc. v. Blake Const. Co.*, 765 F.2d 195, 205 n.21 (D.C. Cir. 1985).

Under res judicata, "'a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *Porter v. Shah*, 606 F.3d 809, 813–14 (D.C. Cir. 2010), quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009). If those factors have been satisfied, a court may dismiss a case or claims precluded by res judicata under Rule 12(b)(6). *See, e.g.*, *Nader v. Democratic Nat'l Comm.*, 590 F. Supp. 2d 164, 169 (D.D.C. 2008), citing *Stanton*, 127 F.3d at 76–77; *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008).

In contrast, under issue preclusion or collateral estoppel, "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992), quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Issue preclusion applies if three criteria are met: (1) in the prior litigation, the issue was "actually litigated, that is, contested by the parties and submitted for determination by the court;" (2) the prior litigation was "actually and necessarily determined by a court of competent jurisdiction;" and (3) "preclusion in the second trial [does] not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal citations omitted). In short, "claim

22

preclusion forecloses all that which might have been litigated previously," *I.A.M. Nat'l Pension Fund*, 723 F.2d at 949, citing *Brown*, 442 U.S. at 139 n.10, while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." *Novak v. World Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983), citing *Allen*, 449 U.S. at 94. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [ ] prevent serial forum-shopping and piecemeal litigation." *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Allen*, 449 U.S. at 94.

Applying the four res judicata factors, the Court determines that the doctrine bars the claims asserted against the Albers defendants in Counts I through VI of the second amended complaint. Plaintiff does not dispute that the California action and this case are between the same parties, and so the Court finds that requirement to be satisfied. However, plaintiff does challenge the remaining three factors, which the Court will address in turn.

### A. The California decision and this case involve the same claims or causes of action.

Plaintiff argues that "because the state and federal actions involve different claims, the California Court of Appeal decision must not be given res judicata effect." Pl.'s Opp. at 6, 8–10. But this argument is not persuasive.

Res judicata bars not only claims that were actually brought in the prior action, but also those claims or causes of action that "'*could have been raised* in that action.'" *Drake*, 291 F.3d at 66 (emphasis in original), quoting *Allen*, 449 U.S. at 94; *see also Hardison*, 655 F.2d at 1288 ("[P]arties to a suit . . . may not relitigate any ground for relief which they already have had an opportunity to litigate – even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not."). For that reason, for res judicata purposes, a "'cause of action

is determined by the factual nucleus, not the theory on which a plaintiff relies.'" *Sheptock v. Fenty*, 707 F.3d 326, 330 (D.C. Cir. 2013), quoting *Faulkner v. GEICO*, 618 A.2d 181, 183 (D.C. 1992).

To determine whether claims derive from the same nucleus of facts, this Circuit has adopted a transactional, pragmatic approach. *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006), citing *Stanton*, 127 F.3d at 78. A court looks at "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Stanton*, 127 F.3d at 78, quoting Restatement (Second) of Judgments § 24(2) (1982).

Here, the Court finds that Counts I through VI of the second amended complaint share the same factual nucleus as the California arbitration and the subsequent Court of Appeals decision: the fee dispute between plaintiff and the Albers defendants. And in each of those counts, plaintiff seeks to recover the very fees for the California litigation to which the arbitration panel found he was categorically not entitled, as well as damages arising from the Albers defendants' allegedly improper deprivation of those fees.

In Count I – Breach of Contract, plaintiff alleges that the Albers defendants have "failed to pay the nonrefundable retainer" of $82,000.00 provided for in the Fee Agreement. 2d Am. Compl. ¶¶ 11–12. In Count II – Breach of Contract (Anticipatory Breach), plaintiff asserts that the Albers defendants are in anticipatory breach of the Fee Agreement because they have indicated that, "in the event that there is a recovery of any monies" from the California litigation, they will not pay plaintiff the fifty percent "bonus or contingent fee" to which he claims he is entitled.[12] *Id.* ¶¶ 13–

---

[12]     The matter for which plaintiff alleges he is entitled to a contingent fee – the California litigation – was unsuccessful, and that decision has been final since 2004. *Guthy-Renker Corp.*, 92 F. App'x 497 (affirming dismissal). Therefore, plaintiff's claims in Count II and Count III for damages based on the purported contingent fee are likely moot, since the Albers defendants have not received, and will never receive, any recovery for that case.

14.   In Count III – Estoppel, plaintiff claims that he relied to his detriment on the Albers defendants' representations that he would be paid "(1) the $82,000 nonrefundable retainer, (2) the bonus or contingent fee, and (3) additional monies" about which plaintiff provides no further detail or description.  *Id.* ¶¶ 15–17.   In Count IV – Fraud and Deceit, and Count V – Conspiracy to Commit Fraud and Deceit, plaintiff argues that the Albers defendants, former defendant Michaelson, and the Doe defendants had no intention of compensating plaintiff for his legal services, but that defendants "failed to inform [plaintiff] and others of that fact and allowed them to continue providing legal services," made false representations concerning eventual payment, and conspired to procure legal services from plaintiff without compensating him.  *Id.* ¶¶ 18–29.  And finally, in Count VI – Negligent Misrepresentation, plaintiff again claims that the Albers defendants decided they would not pay plaintiff for his work, and that they "knew or should have known they had a duty" to disclose that decision to him, but failed to do so.  *Id.* ¶¶ 30–36.

At bottom, each of these counts is based on plaintiff's assertion that he was entitled to certain attorneys' fees pursuant to the Fee Agreement, and that the Albers defendants wrongfully denied him those fees.  But the arbitration award in the Albers defendants' favor, and its subsequent confirmation by the California trial court and the Court of Appeals, precludes his recovery on those claims.  That is because the arbitration panel determined that plaintiff was only entitled to a total of $8,500.00 in fees for his work on the California litigation, and that the Albers defendants had already paid plaintiff that amount.  *Naegele III*, 940 F. Supp. 2d at 4, citing Arb. Award at 10–11.  Indeed, the panel found that the Albers defendants had overpaid plaintiff by a whopping $726,981.32.  *Id.*   In other words, the panel determined that plaintiff was not entitled to any additional fees for the California litigation, and instead, that plaintiff was required to "'refund

clients (Albers) the sum of $726,981.32 forthwith.'"  *Id.*, quoting Arb. Award at 11.  The Court of Appeals confirmed this award and the panel's findings.  *Albers*, 2013 WL 5945676, at *13.

Because Counts I through VI all arise out of the fee dispute between plaintiff and the Albers defendants that was the subject of the California arbitration and the Court of Appeals decision, the Court finds that this case and the California action arise out of the same nucleus of fact, and that they therefore involve the same claims or causes of action for res judicata purposes.  The fact that plaintiff's claims here are premised on different legal theories of relief than the specific claims adjudicated before the arbitration panel and confirmed by the Court of Appeals is insufficient to defeat the claim-preclusive effect of that decision.  *See Apotex*, 393 F.3d at 218 ("[S]imply raising a new legal theory . . . is precisely what is barred by res judicata.").

> **B.     The California courts were courts of competent jurisdiction and the arbitration award reflects a final, valid judgment on the merits.**

The Court next finds that the arbitration award, as confirmed by the California Court of Appeals, reflects a final, valid judgment on the merits by a court of competent jurisdiction.

"A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction[,] or form.'"  *Sheppard*, 791 F. Supp. 2d at 7, quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968).  It is a "settled principle that '[t]he decisions of binding arbitration proceedings are final decisions on the merits for purposes of res judicata.'"  *Camp v. Kollen*, 567 F. Supp. 2d 170, 173 n.6 (D.D.C. 2008), quoting *Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie'*, 172 F. Supp. 2d 79, 95 (D.D.C. 2001); *see also Naegele III*, 940 F. Supp. 2d at 8 ("[U]nder California law – which this Court would necessarily look to in determining whether to apply the doctrine of res judicata to a California judgment – it is well settled that a judicially-confirmed arbitration award is afforded res judicata effect."), citing Cal. Civ. Proc. Code § 1287.4;

*Dial 800 v. Fesbinder*, 12 Cal. Rptr. 3d 711, 724 (Cal. Ct. App. 2004) ("As a general matter, an arbitration award is the equivalent of a final judgment which renders all factual and legal matters in the award res judicata.").

As discussed above, the arbitration panel addressed the merits of the fee dispute between the parties, and it found that plaintiff was only entitled to a total of $8,500.00 in attorneys' fees under the Fee Agreement. *Naegele III*, 940 F. Supp. 2d at 4, citing Arb. Award at 2, 10–11. The California Court of Appeals affirmed that award, finding that the arbitration panel "had jurisdiction to hear the parties' fee dispute and to issue an arbitration award in the Alberses' favor," and that the trial court properly exercised its jurisdiction in confirming the award. *Albers*, 2013 WL 5945676, at *9–*11, *13. Because plaintiff has not appealed that decision, it has now become final under California law. *See, e.g.*, *Agarwal v. Johnson*, 603 P.2d 58, 72 n.11 (Cal. 1979) ("Under the California rule, the instant judgment . . . is not final for purposes of res judicata during the pendency of and until the resolution of the appeal."), *disapproved of on other grounds by White v. Ultramar, Inc.*, 981 P.2d 944 (Cal. 1999).

Plaintiff offers nine separate arguments in support of his claim that the California Court of Appeals decision is not a final, valid judgment of a court of competent jurisdiction, and that it therefore cannot be given res judicata effect. Pl.'s Opp. at 5–13. But the majority of those arguments attack the validity of the decision on the same interrelated jurisdictional and substantive grounds. Specifically, plaintiff contends that the California courts never properly had jurisdiction over the fee dispute because the forum selection clause in the Fee Agreement designated the District of Columbia as the exclusive forum for disputes arising out of that agreement, and that the arbitration panel, the trial court, and the Court of Appeals each ignored binding Supreme Court

precedent when they undertook to exercise jurisdiction over the fee dispute.  Pl.'s Opp. at 5–6, 8–

12, citing *M/S Bremen v. Zapata Off-Shore Co.* (*The Bremen*), 407 U.S. 1 (1972).

This argument has already been raised before the arbitration panel, the California Superior

Court, the California Court of Appeals, the California Supreme Court, the United States Court of

Appeals for the District of Columbia, and the U.S. Supreme Court.  Each of those courts has either

expressly rejected it or denied plaintiff's request for review.[13]  This Court will join the chorus.

Plaintiff claims that the California Court of Appeals decision is "fatally flawed" because it

"ignored 'black letter law' as enunciated by the U.S. Supreme Court in *The Bremen* and its

progeny" in failing to recognize that the forum selection clause in the Fee Agreement gave the

District of Columbia, and not California, exclusive jurisdiction over the fee dispute.  Pl.'s Opp. at

5–6; *see also id.* at 10–11 (claiming that plaintiff can collaterally attack the California decision

"based on the absence of authority of the earlier tribunals to issue their decisions, owing to the

instant forum-selection clause and the applicable law nationally that governs its effect").  As

plaintiff puts it:

> Because this forum-selection clause controls, the California arbitrators
> never had jurisdiction to do anything, much less render an adverse
> arbitration award against the plaintiff; the California Superior Court never
> had jurisdiction to confirm the arbitration award that was illegal *ab initio*,

---

13      *See Naegele III*, 940 F. Supp. 2d at 3 n.2 (noting that DRS overruled plaintiff's objection
to the arbitration panel's jurisdiction over the fee dispute, and that plaintiff appealed that decision
to the California Supreme Court, which denied his petition for review); *Albers*, 2013 WL 5945676,
at *7–*11 (finding that both the arbitration panel and the trial court had properly exercised
jurisdiction over the fee dispute, despite plaintiff's forum selection clause arguments based on *The
Bremen*); Appellant's Brief, *Naegele v. Albers*, No. 13-7110, 2013 WL 6072990 (Nov. 18, 2013)
(plaintiff's appeal to the D.C. Circuit presenting the same jurisdictional arguments based on *The
Bremen* and the forum selection clause in the Fee Agreement); *Naegele*, 2014 WL 4980898 (D.C.
Circuit order remanding plaintiff's appeal for further proceedings consistent with the California
Court of Appeals decision); Pet. for Writ of Cert., *Naegele v. Albers*, 2014 WL 6467871 (plaintiff's
petition to the Supreme Court for review of the D.C. Circuit's remand decision, raising the same
jurisdictional arguments); *Naegele*, 135 S. Ct. 1177 (2015) (Supreme Court decision denying
plaintiff's petition for a writ of certiorari).

or render a judgment pursuant to it; and the California Court of Appeal never had jurisdiction to decide anything either, much less in an <u>unpublished</u> opinion.

*Id.* at 10.

In *The Bremen*, the case to which plaintiff repeatedly refers in support of his jurisdictional argument, the Supreme Court held that pre-dispute forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." 407 U.S. at 10. The D.C. Circuit has adopted that view. *See, e.g.*, *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 700 (D.C. Cir. 1989). But the Court finds that this general principle of law does not conflict with the DRS panel's exercise of what was, at the time it agreed to hear the dispute, temporary and nonbinding jurisdiction under the MFAA.

As the California Court of Appeals observed in applying analogous California Supreme Court precedent, a pre-dispute contractual agreement – such as a forum selection clause – does not preclude the parties from first engaging in nonbinding arbitration under the MFAA:

> [E]ven where the parties have entered into a pre-dispute contractual . . . agreement . . . the client retains the statutory right to arbitration under the MFAA. If the client properly invokes the right to arbitrate, the MFFA arbitration takes place first and any award issued by the arbitrators is non-binding unless the parties otherwise agree or a party willfully fails to appear at the arbitration hearing. Once the non-binding MFAA arbitration is completed, either party is free to seek enforcement of the preexisting . . . agreement.

*Albers*, 2013 WL 5945676, at *8, citing *Schatz*, 198 P.3d at 1109; *Aguilar v. Lerner*, 88 P.3d 24 (Cal. 2004). Normally, "unless the parties agree to be bound by the MFAA arbitration, and thus to end the dispute then and there, the case may, following MFAA arbitration, proceed by normal means." *Schatz*, 198 P.3d at 1119. Such normal means could include the rejection of the arbitration award and the trial de novo of the dispute in a jurisdiction specified by a forum selection

clause, for example.  In other words, the MFAA typically acts only as a brief, nonbinding detour on the route to the eventual litigation of the dispute in the forum agreed to by the parties.

But the statute further provides that where, as here, a party willfully fails to appear at the arbitration hearing, the award becomes binding, and "that party shall not be entitled to a trial after arbitration" by rejecting the award.  Cal. Bus. & Prof. Code § 6204(a).  So, it was not, as plaintiff contends, the DRS panel's exercise of jurisdiction that permanently lodged the matter in the California courts instead of in the forum specified in the Fee Agreement.  Rather, as it has already been held in this case, it was plaintiff's willful failure to appear at the arbitration that transformed the non-binding arbitration decision into a binding award and destroyed plaintiff's ability to reject the award and to obtain a trial de novo:

> Naegele made his jurisdictional objections abundantly clear for the record, and DRS considered his arguments and ultimately disagreed, finding jurisdiction.  Had Naegele simply participated in the arbitration proceedings and appeared for the hearing notwithstanding – obviously preserving his objections along the way (as he did) – and thereafter filed a timely request for trial (as he did), it seems he could have achieved the very result he was seeking:  to have the fee dispute and his related claims adjudicated anew before this Court as though the MFAA arbitration had never happened.  Instead, Naegele doubled down on his obstinance, refusing to abide by the MFAA's provisions and willfully failing to appear at the arbitration hearing.

*Naegele IV*, 958 F. Supp. 2d at 25 n.8 (internal citations omitted).  Plaintiff cannot rely on his own failure to participate in the mandatory arbitration to attack the validity of that award now on jurisdictional or substantive grounds.  In light of plaintiff's willful failure to appear, the Court finds that the DRS panel had jurisdiction to issue a decision on the fee dispute under the MFAA, and the California Superior Court and Court of Appeals had jurisdiction to confirm that award.

Therefore, plaintiff's unsupported assertion that the arbitration award was not final or binding and cannot be given res judicata effect "[b]ecause [plaintiff] never agreed to be bound by the California arbitration proceeding [and] he filed his rejection of the arbitration award and a

request for trial" within the statutory timeframe, Pl.'s Opp. at 8–10, is simply incorrect as a matter of law.  *See Naegele IV*, 958 F. Supp. 2d at 26 ("[T]he Court concludes that Naegele willfully failed to appear at the arbitration hearing on November 17, 2004, which means that he is unable to pursue a trial de novo and that the award rendered by the arbitration panel is binding."), citing Cal. Bus. & Prof. Code §§ 6203(b), 6204(a).  Accordingly, the Court finds that the arbitration award, as confirmed by the California Court of Appeals, constitutes a final, valid judgment on the merits, and that the California courts were courts of competent jurisdiction for the purposes of res judicata.

### C.    Plaintiff's other arguments against the applicability of res judicata to his claims are unavailing.

Plaintiff also claims that "all of the issues with respect to the fees paid by the Albers to the plaintiff . . . were addressed thoroughly in plaintiff's criminal case in this Court," and that because "no wrongdoing was found, even after experts considered such fees in great detail, plaintiff is entitled to res judicata effect instead of the Albers."  Pl.'s Opp. at 11, citing *United States v. Naegele*, 537 F. Supp. 2d 36; *see also* Pl.'s Opp. at 13 (arguing that "all claims by the Albers Defendants against the plaintiff were discharged in the plaintiff's bankruptcy before this Court" and that "no wrongdoing was found on the part of plaintiff" in the criminal case).  Plaintiff offers no specifics to guide the Court in determining whether, and to what extent, plaintiff's entitlement to fees from the Albers defendants was addressed "in great detail" in his criminal case.  But in any event, that decision held only that the government had "failed to present evidence sufficient to sustain a conviction" – that is, proof beyond a reasonable doubt – that plaintiff made false statements on his bankruptcy filings and in a creditors' meeting regarding whether he had any contingent fee agreements with clients of his law practice.  *United States v. Naegele*, 537 F. Supp. 2d at 38–39, 43.  It did not answer the question of the reasonableness of the fees plaintiff sought from the Albers defendants, and more importantly, it was decided well after the arbitration panel

issued its award.  Finally, the Albers defendants were not parties to that proceeding; it was the United States versus Timothy Naegele.  So the Court cannot find, based on that decision, that plaintiff is entitled to res judicata on these issues.

Plaintiff also asserts that "[t]he statute of limitations has run against enforcement of [defendants'] arbitration award, and [the award] is time barred" because plaintiff was not served with the petition to confirm the arbitration award until after the time to do so had elapsed.  Pl.'s Opp. at 12–13.  But this argument was already directly addressed, and squarely rejected, by the California Court of Appeals:

> Naegele next asserts that . . . the petition [to confirm the arbitration award] was time-barred as a matter of law by the four-year statute of limitations set forth in Code of Civil Procedure section 1288.  While it is undisputed that the Alberses failed to serve Naegele with their re-filed petition within the limitations period, we conclude that the trial court did not abuse its discretion in granting equitable relief from the untimely service. . . .
>
> [T]he Alberses timely filed and served their original petition to confirm the arbitration award by April 2005, approximately two months after service of the award.  Therefore, long before the statute of limitations expired, Naegele was on notice that the Alberses intended to seek enforcement of the arbitration award and to argue that Naegele was not entitled to a trial de novo based on his willful failure to appear at the arbitration hearing.  After Naegele demanded that the petition be withdrawn in light of his pending request for trial and further threatened to seek sanctions against the Alberses if they failed to do so, the Alberses agreed to dismiss their petition without prejudice pending the federal court's ruling on their motion to dismiss for lack of jurisdiction.  The Alberses also informed Naegele of their intent to re-file the petition in California if their motion to dismiss was granted.
>
> For the reasons previously discussed, the Alberses did not re-file the petition to confirm the arbitration award until January 13, 2009, shortly before the expiration of the statute of limitations.  Although the Alberses timely filed that petition, they were unable to locate Naegele to serve him with a copy within the limitations period.  The Alberses' attorney submitted a declaration to the trial court in which he detailed his year-long effort to locate and serve Naegele, and based on such evidence, the trial court reasonably could find that Naegele had evaded service.  On appeal, Naegele insists that he never attempted to evade service and had no basis for knowing that the Alberses intended to file a second petition.  However, it

> was the exclusive province of the trial court to resolve conflicts in the evidence and to determine the credibility of witnesses, and it is not the role of this court to second-guess the trial court's credibility determinations.  On this record, there was substantial evidence to support the trial court's conclusion that, based on the respective actions of the parties, the Alberses were entitled to equitable relief from their delayed service of the petition.  The petition accordingly was not time-barred.

*Albers*, 2013 WL 5945676 at *12–13.  Because this issue was actually litigated in the California Court of Appeals, which this Court has already determined was a court of competent jurisdiction, the Court finds that the doctrine of issue preclusion applies to prevent plaintiff from rearguing this point now.

For all those reasons, the Court finds that plaintiff's claims stemming from the fee dispute which was the subject of the California arbitration proceedings are barred by res judicata, and the Court will dismiss Counts I through VI against the Albers defendants pursuant to Rule 12(b)(6).

### III. The Court will dismiss Counts IX through XIII against the Albers defendants for lack of personal jurisdiction.

The Court will also dismiss the remaining counts against the Albers defendants, which arise out of their alleged involvement in initiating the criminal bankruptcy fraud prosecution against plaintiff in the District of Columbia:  Count IX – Intentional Infliction of Emotional Distress, Count X – Conspiracy to Commit Intentional Infliction of Emotional Distress, Count XI – Negligent Infliction of Emotional Distress, Count XII – Malicious Prosecution, and Count XIII – Conspiracy to Commit Malicious Prosecution.  2d Am. Compl. ¶¶ 49–64.

The Albers defendants, who are residents of California, contend that the case against them must be dismissed because there is no basis for exercising personal jurisdiction over them under the District of Columbia Long Arm Statute, D.C. Code § 13-423, the Constitution, or the minimum contacts doctrine.  Defs.' Mem. at 6–7.  Plaintiff, who bears the burden of proof on the issue of personal jurisdiction, does not address the Albers defendants' Rule 12(b)(2) argument in his

opposition in great detail, other than to state that the Albers defendants consented to this Court's jurisdiction through the Fee Agreement's forum selection clause and that they "have caused tortious injuries to the plaintiff in the District of Columbia." Pl.'s Opp. at 4 n.4, 6. The Court finds that plaintiff has provided no independent basis for exercising personal jurisdiction over the Albers defendants in relation to Counts IX through XIII, and that in light of the dismissal of Counts I through VI of the second amended complaint – the counts related to the Fee Agreement asserted against the Albers defendants – the forum selection clause no longer operates as the Albers defendants' consent to the jurisdiction of this Court. Accordingly, the Court will dismiss the Albers defendants from this case for lack of personal jurisdiction.

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000), *citing United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

First, a plaintiff must show that personal jurisdiction may be grounded in one of the several bases provided by the D.C. Long Arm statute. D.C. Code § 13-423; *GTE New Media Servs.*, 199 F.3d at 1347. The statute provides, in part, that a court may exercise personal jurisdiction over an individual as to claims arising from a person's

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial

> revenue from goods used or consumed, or services rendered, in the District
> of Columbia; [or]
>
> (5) having an interest in, using, or possessing real property in the District of
> Columbia.

D.C. Code §§ 13-423(a)(1)–(5).  Subsection (b) of the Long Arm Statute qualifies its reach by

noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for

relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13-423(b).

Second, the Due Process Clause of the Fifth Amendment requires the plaintiff to

demonstrate "'minimum contacts' between the defendant and the forum establishing that 'the

maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*GTE New Media Servs.*, 199 F.3d at 1347, quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310,

316 (1945); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C.

Cir. 2002).  It is "'essential in each case that there be some act by which the defendant purposefully

avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws.'" *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 127

(D.C. Cir. 1999), quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  In short, "'the defendant's

conduct and connection with the forum State [must be] such that he should reasonably anticipate

being haled into court there.'"  *GTE New Media Servs.*, 199 F.3d at 1347, quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

**A.     There is no independent basis for the exercise of personal jurisdiction over the
Albers defendants in Counts IX through VI of the second amended complaint.**

The Court first addresses whether it can properly exercise jurisdiction over the Albers

defendants pursuant to the D.C. Long Arm Statute.  Plaintiff does not allege that the Albers

defendants transacted any business in the District, contracted to supply services in the District, or

own any property in the District.  *See* D.C. Code § 13-423(a)(1), (a)(2), (a)(5).  However, plaintiff

does argue that "[i]t is clear that the Albers Defendants have caused tortious injuries to the plaintiff in the District of Columbia."  Pl.'s Opp. at 4 n.4.  Specifically, plaintiff alleges that the Albers defendants "initiat[ed] criminal proceedings against [him] on or about May 24, 2004," 2d Am. Compl. ¶¶ 50, 52, 61, and that they "played an active role in the case" by "contact[ing] the Criminal Division of the Justice Department in Washington, D.C. . . . and request[ing] that the Department conduct an investigation with respect to the proper reporting of legal fees paid by the Albers, in Naegele's calendar year 2000 bankruptcy filings."  Id. ¶ 58.  In support of those allegations, plaintiff points to a letter from the Albers defendants to attorneys in the Justice Department's Criminal Division Fraud Section, describing their telephonic and written request for an investigation.  Id. ¶¶ 50, 58, citing Attach. A to Pl.'s Opp. to Defs.' 2d Mot. to Dismiss [Dkt. # 93-1] ("DOJ Letters").[14]  Based on these actions, plaintiff asserts several tort claims against the Albers defendants in Counts IX through XIII of the second amended complaint.  But the Court finds that this limited conduct does not suffice to bring the Albers defendants within the Court's jurisdiction under either tortious injury provision of the Long Arm Statute.

First, the Court concludes that plaintiff has failed to allege facts sufficient to show the Albers defendants caused him "tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code § 13-423(a)(3).  The only acts plaintiff identifies in his second amended complaint are the two communications with the Department of Justice in the District:  the Albers defendants' phone call on May 24, 2004, and their letter dated June 1, 2004. 2d Am. Compl. ¶¶ 50, 58, citing DOJ Letters.  But the letter indicates that it was sent from the

---

[14]    Because "[a] court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of . . . personal jurisdiction," *Artis*, 223 F. Supp. 2d at 152, the Court relies on these letters, which plaintiff incorporates in his second amended complaint and which were attached to plaintiff's opposition to the Albers defendants' second motion to dismiss, in determining whether it may properly exercise personal jurisdiction over the Albers defendants.

Albers defendants' address in California, and plaintiff has provided no evidence from which the

Court could conclude that the phone call was not also placed from California.  Communications

from California cannot provide a basis for the exercise of personal jurisdiction in the District of

Columbia under section 13-423(a)(3).  *See, e.g.*, *Moncrief v. Lexington Herald–Leader Co.*, 807

F.2d 217, 219, 221 (D.C. Cir. 1986) (finding no basis for jurisdiction under section 13-423(a)(3)

where libelous statements were printed in Maryland and mailed from there into the District of

Columbia, because the tortious "act" occurred in Maryland).  Indeed, as the D.C. Circuit observed

in a case where an allegedly slanderous telephone call was made from Wisconsin to the District:

> The "act," of course, is the act of the alleged tortfeasor – here that act,
> uttering defamatory statements, occurred in Wisconsin. . . . The additional
> facts that other third party acts were necessary to consummate the tort, or
> that the injury itself took place within the District, cannot under our reading
> of the [statute] grant jurisdiction that is otherwise lacking.  Unless we wish
> to delve into a magical mystery tour of "projecting presences," we must find
> that no jurisdiction can be afforded by virtue of section (a)(3).

*Margoles v. Johns*, 483 F.2d 1212, 1218 (D.C. Cir. 1973).  Because plaintiff has not identified any

act or omission by the Albers defendants in the District that caused his tortious injuries, he has

failed to show that section 13-423(a)(3) of the Long Arm Statute has been satisfied.

Plaintiff also cannot satisfy section 13-423(a)(4), which permits a court to exercise

jurisdiction over a person "causing tortious injury in the District of Columbia by an act or omission

outside the District of Columbia."  D.C. Code § 13-423(a)(4).  Plaintiff has alleged that the Albers

defendants caused him tortious injury in the District by contacting government authorities by

phone and by letter from California, 2d Am. Compl. ¶¶ 50, 52, 58, 61, and so the first requirement

of that provision is satisfied.  However, "because the harm-generating act (or omission) occurred

outside" the District, section 13-423(a)(4) "calls for something more" – that is, regularly doing or

soliciting business in the District, engaging in any persistent course of conduct in the District, or

deriving substantial revenue from activities in the District. *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987); D.C. Code § 13-423(a)(4). These "plus factor[s] . . . serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Carr*, 814 F.2d at 763.

Plaintiff does not argue that the Albers defendants conducted or solicited business in the District or that they derived any revenue from the District. He broadly asserts that "[d]efendants played an active role in procuring and continuing the criminal case" against him, 2d Am. Compl. ¶ 58, but the only actions plaintiff identifies by the Albers defendants that could possibly be considered a "persistent course of conduct" – his allegations of their early involvement in bringing plaintiff's alleged misconduct to the prosecutors' attention – took place in California, as discussed above, and not in the District. And such calls and emails do not, standing alone, constitute a persistent course of conduct. *See, e.g.*, *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1095 nn.8–9 (D.C. Cir. 2008) (finding that even regular telephone calls from the London defendant to the District were insufficient to establish long-arm jurisdiction under sections 13-423(a)(1) and (a)(4)). The Court finds that plaintiff's allegations do not show even "scant" affiliations with the District as required to satisfy section 13-423(a)(4), *see Carr*, 814 F.2d at 763, and it therefore concludes that the Long Arm Statute cannot serve as a basis for exercising personal jurisdiction over the Albers defendants.

**B.     The Court declines to exercise pendent personal jurisdiction over the Albers defendants based on the forum selection clause in the Fee Agreement.**

As was true when plaintiff opposed former defendant Michaelson's motion to dismiss on personal jurisdiction grounds, the opposition to the Albers defendants' present motion "focuses on the fee agreement rather than contesting the defendant[s'] argument that minimum contacts lack between [defendants] and the District of Columbia." *Naegele I*, 355 F. Supp. 2d at 138. The Court

will therefore examine plaintiff's chief argument:  that the Albers defendants opened themselves

up to the jurisdiction of this Court by signing the Fee Agreement.  *See* Pl.'s Opp. at 6 ("The Albers

Defendants have expressly consented to this Court's exclusive jurisdiction; and they have never

challenged this forum-selection clause or its effect.").

Plaintiff is correct that the Albers defendants agreed that any disputes or litigation *arising*

*out of the Fee Agreement* "shall be in a court of the District of Columbia and/or in the United States

District Court for the District of Columbia," and that the Albers defendants "consent[ed] to the

jurisdiction of such court or courts with respect to any disputes or litigation *arising out of this*

*agreement*."  2d Am. Compl. ¶ 2 (emphasis added); *see also* Fee Agreement at ECF 4, 8, 11, 16.

But in signing that agreement, the Albers defendants did not consent to being sued in the District

of Columbia for any other disputes.  Thus, the forum selection clause in the Fee Agreement

provides the Court with no basis for haling the Albers defendants into court on the remaining

counts of the second amended complaint, all of which stem from the Albers defendants' alleged

involvement in initiating the criminal case against plaintiff related to his bankruptcy filings, and

not from the dispute over the attorneys' fees described in the Fee Agreement.

It is true that this Circuit has adopted the doctrine of "pendent personal jurisdiction," which

permits a court to exercise personal jurisdiction over a defendant "'with respect to a claim for

which there is no independent basis of personal jurisdiction so long as it arises out of a common

nucleus of operative facts with a claim in the same suit over which the court does have personal

jurisdiction.'"  *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 31 (D.D.C.

2013), quoting *Oetiker v. Jurid Werke GmbH*, 556 F.2d 1, 5 (D.C. Cir. 1977).  But the remaining

counts do not share a common nucleus of operative fact with the now-dismissed counts stemming

from the Fee Agreement, so the doctrine does not apply.  And even if it did, the D.C. Circuit has

observed that a "district court may have discretion to dismiss the pendent claims where 'considerations of judicial economy, convenience and fairness to litigants' so dictate." *Oetiker*, 556 F.2d at 4–5, citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court finds that these considerations also weigh heavily in favor of declining to exercise pendent personal jurisdiction.

Finally, the Court finds that haling the Albers defendants into court in the District of Columbia on the counts remaining against them, based only on their conduct in California and the Fee Agreement, would likely "'offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs.*, 199 F.3d at 1347, quoting *Int'l Shoe*, 326 U.S. at 316. Therefore, because plaintiff has not shown that the Long Arm Statute provides a basis for the exercise of personal jurisdiction over the Albers defendants, because the Court declines to exercise pendent personal jurisdiction over the remaining claims, and because the due process requirements of the Constitution would likely not be satisfied in any event, the Court will dismiss Counts IX through XIII against the Albers defendants for lack of personal jurisdiction.

## IV.   The Court will dismiss Counts V and VII through XIII against the Doe defendants pursuant to Rule 12(b)(6).

The second amended complaint asserts a litany of claims against the ten unnamed Doe defendants: Count V – Conspiracy to Commit Fraud and Deceit, Count VII – Tortious Interference with Contract, Count VIII – Conspiracy to Commit Tortious Interference with Contract, Count IX – Intentional Infliction of Emotional Distress, Count X – Conspiracy to Commit Intentional Infliction of Emotional Distress, Count XI – Negligent Infliction of Emotional Distress, Count XII – Malicious Prosecution, and Count XIII – Conspiracy to Commit Malicious Prosecution. 2d Am. Compl. ¶¶ 25–29, 37–48, 49–64. Yet the sum total of the facts alleged about the Doe defendants is that the Albers defendants "sought the advice of one or more persons including, but

40

not limited to, one or more attorneys including Michaelson . . . who have advised the Albers to take certain actions or engage in action, which has resulted in the injuries to Naegele." *Id.* ¶ 10. Plaintiff has been unable to ascertain "the true names and capacities" of these individuals, despite the pendency of this case and the parallel actions since 2003. *Id.* ¶ 6.

The D.C. Circuit has stated that a "district court may *sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is 'patently obvious' that the plaintiff cannot possibly prevail based on the facts alleged in the complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012), quoting *Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990); *see also Baker*, 916 F.2d at 726 (stating that, "in cases where the plaintiff has not advanced a shred of a valid claim," the standard approach of requiring notice to the plaintiff before Rule 12(b)(6) dismissal *sua sponte* "can only lead to a waste of judicial resources"). Here, the Court finds that plaintiff has failed to plausibly allege that the Doe defendants did anything at all, let alone that they engaged in the tortious acts of which they have been accused.

In Count VII, plaintiff asserts that the Doe defendants interfered with his entitlement to fees under the Fee Agreement. 2d Am. Compl. ¶¶ 37–43. To state a claim for tortious interference with contract, a plaintiff must "establish '(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach.'" *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012), quoting *Cooke v. Griffiths–Garcia Corp.*, 612 A.2d 1251, 1256 (D.C. 1992). As to the issue of the Doe defendants' intentional procurement of the Albers defendants' breach of the Fee Agreement, the second amended complaint contains no facts from which the Court could draw a "reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

Plaintiff alleges "[o]n information and belief," the Doe defendants "advised" the Albers defendants not to pay plaintiff, that the Doe defendants "had knowledge of the [Fee] Agreement . . . yet they engaged in malicious and intentional efforts to injure and interfere" with the Fee Agreement, and that they "induced the Albers to take actions that injured Naegele . . . by telling the Albers that they did not have to pay Naegele and others, and by falsely stating that the present and future money claimed by Naegele and others was not owed and did not have to be paid." 2d Am. Compl. ¶¶ 37–41.  But these allegations are entirely conclusory, and plaintiff has alleged no facts to support his claims of wrongdoing by the Doe defendants.  That plaintiff was not ultimately paid all of the fees to which he believed he was entitled is not enough to give rise to a plausible inference that the contract was breached, that the Doe defendants are responsible for that breach, or that they intentionally caused the breach.  *See Patton Boggs*, 683 F.3d at 404.  And plaintiff's insistence that the Doe defendants interfered with his entitlement to fees is contradicted, at least in part, by the arbitration panel's finding that plaintiff was generously compensated by the Albers defendants, and that they actually overpaid paid him by more than $700,000.  *See Naegele III*, 940 F. Supp. 2d at 4, quoting Arb. Award at 10–11.  For those reasons, the Court finds that Count VII of the second amended complaint fails to state a claim for tortious interference against the Doe defendants, and it will dismiss that count.

The Court will also dismiss Count V – Conspiracy to Commit Fraud and Deceit, and Count VIII – Conspiracy to Commit Tortious Interference with Contract.  "Under both federal and District of Columbia law, civil conspiracy is not actionable in and of itself."  *Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989).  Because the Court has determined that underlying tort claims upon which the conspiracy claims in Counts V and VIII are based – the alleged fraud and deceit claim in Count IV, and the alleged tortious interference with contract

claim in Count VII – will be dismissed, it necessarily follows that the conspiracy counts must fail, as well.  *See, e.g.*, *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 886 F. Supp. 874, 883 (D.D.C. 1995).

As for Counts IX through XIII, which allege tortious injuries arising from the Doe defendants' purported involvement in instigating the criminal investigation into plaintiff's bankruptcy, a review of the second amended complaint reveals that plaintiff does not offer a single fact concerning the Doe defendants that would give rise to liability for those claims, nor does he claim that the Doe defendants engaged in any specific acts that caused the alleged tortious injuries. Plaintiff lumps the Doe defendants in with all of the other defendants, but the only conduct he describes was that of the Albers defendants:

> The Defendants played an active role in the [criminal] case.  For example, they contacted the Criminal Division of the Justice Department in Washington, D.C. on or about May 24, 2004, and requested that the Department conduct an investigation with respect to the proper reporting of legal fees paid by the Albers, in Naegele's calendar year 2000 bankruptcy filings.  See, e.g., Letter from the Albers [defendants] to Joshua Hochberg and Mike Koenig, dated June 1, 2004.

2d Am. Compl. ¶ 58; *see also id.* ¶¶ 50, 52, 61.  The letter plaintiff cites was written and sent by the Albers defendants, and there is no indication in that letter – or in any of the other letters included in the same exhibit – that any other parties besides former defendant Michaelson were involved in the communications with the Department of Justice.  *See* DOJ Letters at ECF 6–9 (letter, email, and fax sent by Michaelson, listing only Michaelson and "Law Offices of Lloyd J. Michaelson").[15]  So, plaintiff has not even offered conclusory allegations, let alone the "sufficient

---

15    Because plaintiff incorporates these letters in his second amended complaint, 2d Am. Compl. ¶¶ 50, 58, the Court may properly rely on them in determining whether plaintiff's complaint fails to state a claim against the Doe defendants.  *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624 (stating that a court may consider "any documents either attached to or incorporated in the complaint" "[i]n determining whether a complaint fails to state a claim").

factual matter" required to state a plausible claim for relief, *Iqbal*, 556 U.S. at 678, that would show that the Doe defendants played any role in the criminal investigation that underlies plaintiff's claims in Counts IX through XIII of the second amended complaint.  For that reason, the Court will also dismiss those counts pursuant to Rule 12(b)(6).

## CONCLUSION

Because the Court finds that Counts I through VI of the second amended complaint against the Albers defendants are barred by res judicata, it will dismiss those claims.  In addition, because the Court finds no basis for the exercise of personal jurisdiction over the Albers defendants as to Counts IX through XIII, it will dismiss those claims, as well.  And finally, because the Court finds that plaintiff has failed to state any viable claim against the Doe defendants, it will also dismiss Counts V and VII through XIII as to those defendants.  Therefore, the Court will dismiss the case in its entirety.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  June 23, 2015